United States Court of Appeals,

Eleventh Circuit.

No. 96-8686.

INSPECTOR GENERAL OF THE UNITED STATES DEPARTMENT OF AGRICULTURE, Petitioner-Appellee,

v.

Ann G. GLENN, as personal representative of J.C. Griffin, Jr., Faye Collins, Draffin & Tucker, C.P.A., Griffin Farms, Inc., B & J Company, Inc., Griffin Oil Company, Inc., Griffin Aviation Inc., Griffin Gin and Supply Co., Ann Glenn, J.C. Griffin, Sr., Respondents-Appellants.

Sept. 18, 1997.

Appeals from the United States District Court for the Middle District of Georgia. (No. 1:94-MC-28-1WLS), W. Louis Sands, Judge.

Before CARNES, Circuit Judge, and HENDERSON and GIBSON[*], Senior Circuit Judges.

GIBSON, Senior Circuit Judge:

In this case, the appellants challenge the scope of the Inspector General's subpoena powers under the Inspector General Act of 1978 ("IGA"), 5 U.S.C. app. §§ 1-12 (1994). The Inspector General of the United States Department of Agriculture subpoenaed, *inter alia,* records, documents, and reports relating to appellants' participation in a federal disaster program. When appellants refused to produce the requested information, the Inspector General sought summary enforcement of the subpoena in the United States District Court for the Middle District of Georgia. Appellants argued that the subpoenas exceeded the Inspector General's statutory authority and were unduly burdensome. The district court disagreed with appellants' contentions and entered an order enforcing the subpoenas. The district court agreed to stay enforcement pending appeal because several issues would be mooted on appeal if appellants were required to produce the subpoenaed information immediately. The appellants now appear before us challenging the scope of the Inspector General's subpoena powers. Because the district court[1] correctly determined that the

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]The HONORABLE W. LOUIS SANDS, United States District Judge for the Middle District of Georgia.

Inspector General did not exceed his statutory authority in issuing the subpoenas and that the subpoenas did not create an undue burden upon appellants, we affirm.

## I. BACKGROUND

In 1993, in response to a hotline complaint alleging questionable disaster program payments to program participants in Mitchell County, Georgia, the United States Department of Agriculture's ("USDA") Inspector General audited the Consolidated Farm Service Agency's ("CFSA")[2] Mitchell County disaster program. The Inspector General sought to determine whether CFSA program participants were complying with regulatory payment limitations. As a result of the audit, the Inspector General determined that $1.3 million in questionable disaster payments were awarded to Mitchell County program participants. As part of the audit, the Inspector General requested various information from appellants to determine their compliance with the payment limitations. When appellants repeatedly refused to provide the requested information, the Inspector General issued subpoenas to require production of the information. The Inspector General sought summary enforcement of the subpoenas in the United States District Court for the Middle District of Georgia. The district court ordered enforcement, and appellants challenge that order on appeal.

## II. DISCUSSION

Due to a concern that fraud and abuse in federal programs was "reaching epidemic proportions," S.Rep. No. 95-1071, at 4 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 2676, 2679, Congress created Offices of Inspectors General in several governmental departments "to more effectively combat fraud, abuse, waste and mismanagement in the programs and operations of those departments and agencies," *id.* at 2676; *see also* 5 U.S.C. app. §§ 1-12 (1994). The Inspector General Act of 1978, 5 U.S.C. app. §§ 1-12, enables Inspectors General to combat such fraud and abuse by allowing "audits of Federal establishments, organizations, programs, activities, and

---

[2]At the time of the audit, the Agriculture Stabilization and Conservation Service ("ASCS") coordinated the disaster program. In 1994, Congress merged the ASCS with several other agencies to form the CFSA. *See* 7 U.S.C. § 6932 (1994). For clarity, we will refer to the ASCS by the name of its successor agency, the CFSA.

functions," *id.* § 4(b)(1)(A), and by authorizing broad subpoena powers, *see id.* § 6(a)(4). We will enforce a subpoena issued by the Inspector General so long as (1) the Inspector General's investigation is within its authority; (2) the subpoena's demand is not too indefinite or overly burdensome; (3) and the information sought is reasonably relevant. *See E.E.O.C. v. Tire Kingdom, Inc.,* 80 F.3d 449, 450 (11th Cir.1996); *United States v. Westinghouse Elec. Corp.,* 788 F.2d 164, 166 (3d Cir.1986).

Although appellants recognize that the scope of the Inspector General's subpoena power is broad, they contend that the USDA's Inspector General exceeded the scope of this power when he subpoenaed information as part of a payment limitation review. Appellants argue that a payment limitation review is a "program operating responsibilit[y]" which section 9(a)(2) of the IGA prohibits agencies from transferring to the Inspector General.

Appellants' argument relies heavily upon a Fifth Circuit case, *see Burlington N. R.R. Co. v. Office of Inspector General,* 983 F.2d 631 (5th Cir.1993). In *Burlington Northern,* the court reviewed the appropriateness of the Inspector General of the Railroad Retirement Board's (RRB) decision to investigate the accuracy of railroad employers' tax reporting. The RRB had been delegated the authority to examine whether railroad employers were accurately reporting tax information. The RRB's Inspector General, acting upon a belief that the RRB had not adequately exercised this power, began investigating the accuracy of the railroad employers' tax reporting methods. When the Inspector General initially discovered reporting abuses, he entered into an understanding with the Internal Revenue Service that the two agencies would jointly examine reporting accuracy on an ongoing basis. When the Inspector General subpoenaed information from Burlington Northern, the railroad company challenged the subpoena, claiming that it exceeded the Inspector General's authority. The Fifth Circuit determined that the Inspector General's plan was to "assume a regular auditing function to detect tax noncompliance and to perhaps assume a tax collecting function," *id.* at 639, and "that the detection of fraud and abuse would have only been a by-product of the proposed tax compliance audit," *id.* at 640. The court thus determined that the

3

district court did not commit clear error in finding "that the proposed audit of Burlington Northern was essentially a tax compliance audit to be conducted pursuant to a long-term, regulatory plan." *Id.* at 641. The Fifth Circuit additionally concluded that Inspectors General do not have authority to conduct regulatory compliance audits "which are most appropriately viewed as being within the authority of the agency itself." *Id.* at 642.

In this case, appellants contend that the Inspector General's payment limitation review was a regulatory compliance audit which was solely within the authority of the CFSA to conduct; therefore, under the rule set forth in *Burlington Northern,* the Inspector General acted beyond the scope of his authority when he subpoenaed information from appellants. We note, however, a significant difference between the audit at issue in the case *sub judice* and the audit at issue in *Burlington Northern*—the Inspector General in this case began its investigation in response to a specific allegation of fraud and abuse in the Mitchell County disaster program. Thus, even were we to adopt the standard set forth in *Burlington Northern,* which we decline to do as it is not necessary to decide the outcome of this case, the subpoenas issued by the Inspector General would be enforceable because they were not issued as part of a regulatory compliance audit which is solely within the authority of the CFSA to conduct.[3]

The IGA specifically directs the Inspector General to coordinate "activities designed ... to prevent and detect fraud and abuse" in departmental programs. 5 U.S.C. app § 2(2)(B). To enable the Inspector General to carry out this function, the IGA authorizes the Inspector General to conduct "audits," *see id.* § 4(b)(1)(A), for the purpose of promoting "efficiency" and detecting "fraud and abuse," *see id.* § 2(2)(A)(B). The IGA's legislative history suggests that such audits are to have three basic areas of inquiry:

---

[3] In *Adair v. Rose Law Firm,* 867 F.Supp. 1111 (D.D.C.1994), the United States District Court for the District of Columbia strongly criticized the Fifth Circuit's decision in *Burlington Northern, id.* 867 F.Supp. at 1117. The court concluded that "*Burlington Northern* imposed limits on the authority of Inspectors General that do not appear on the face of the statute or in its legislative history." *Id.* As stated above, we need not establish definite boundaries of the Inspector General's subpoena power because, in this case, the USDA's Inspector General acted well within his authority when he issued the subpoenas in question.

4

> (1) examinations of financial transactions, accounts, and reports and reviews of compliance with applicable laws and regulations, (2) reviews of efficiency and economy to determine whether the audited entity is giving due consideration to economical and efficient management, utilization, and conservation of its resources and to minimum expenditure of effort, and (3) reviews of program results to determine whether programs or activities meet the objectives established by Congress or the establishment.

S.Rep. No. 95-1071, at 30 (1978), *reprinted in,* 1978 U.S.C.C.A.N. 2676, 2703-04. To enable the Inspector General to conduct such audits in an effective manner, the IGA provides the Inspector General with broad subpoena power which is "absolutely essential to the discharge of the Inspector ... General's functions," for "[w]ithout the power necessary to conduct a comprehensive audit ..., the Inspector ... General could have no serious impact on the way federal funds are expended." *Id.* at 2709.

This case illustrates the necessity of the Inspector General's auditing and subpoena powers. The Inspector General received a hotline complaint regarding questionable payments in the CFSA's Mitchell County disaster program. The Inspector General appropriately began an investigation of the program to detect possible abuse. As part of the audit, the Inspector General requested information from program participants to determine whether the payments they received were warranted. When appellants, who were program participants, refused to produce the requested information, the Inspector General utilized its subpoena powers to acquire the necessary information. Without this ability to issue subpoenas, the Inspector General would be largely unable to determine whether the program and its benefit recipients were operating in an appropriate manner. Thus, an abuse of the system, which the Inspector General was specifically created to combat, could possibly go undetected, and government waste and abuse could continue unchecked. The subpoena power, which the Inspector General appropriately invoked in this case, is vital to the Inspector General's function of investigating fraud and abuse in federal programs.

Appellants contend that the Inspector General is only authorized to detect fraud and abuse within government programs, and that program administrators are responsible for detecting abuse among program participants. While we agree that IGA's main function is to detect abuse within agencies themselves, the IGA's legislative history indicates that Inspectors General are permitted

5

and expected to investigate public involvement with the programs in certain situations. Congressman Levitas, a co-sponsor of the IGA, stated that the Inspector General's "public contact would only be for the beneficial and needed purpose of receiving complaints about problems with agency administration and in the investigation of fraud and abuse by those persons who are misusing or stealing taxpayer dollars." 124 Cong. Rec. 10,405 (1978). From this statement, we conclude that the Inspector General's public contact in this case was appropriate because it occurred during the course of an investigation into alleged misuse of taxpayer dollars.[4] In sum, we conclude that the subpoenas issued by the Inspector General did not exceed the statutory authority granted under the IGA.

Appellants also claim that the subpoenas were too indefinite and were unduly burdensome. CFSA regulations require program participants to retain records for a period of two years following the close of the program year. *See* 7 C.F.R. § 708.1 (1997). Appellants argue that the Inspector General cannot subpoena records which predate the required retention period. We do not agree with appellants' argument. While appellants are not required to retain records beyond the two-year period, no indication exists that records created prior to the retention period should be free from the Inspector General's subpoena powers. *Cf. Phillips Petroleum Co. v. Lujan,* 951 F.2d 257, 260 (10th Cir.1991) ("[P]laintiff's duty to disclose records is not limited to records which plaintiff could have lawfully destroyed but, instead, has retained."); *United States v. Frowein,* 727 F.2d 227, 234 (2d Cir.1984) ("[T]he only purpose for the five-year time limit was to prevent the record retention burden from becoming unreasonable.... This concern is not applicable herein since appellants have, in fact, retained the records sought.").

---

[4]Appellants also argue that, by requiring their compliance with the Inspector General's subpoenas, the court essentially deprives them of their right to have a hearing regarding payment limitation determinations. The general procedure for appealing CFSA county and state committee decisions is set forth at 7 C.F.R. § 780.1-11 (1997). These provisions apply to "decisions made under programs and by agencies, as set forth [within the regulations]." 7 C.F.R. § 780.2 (1997). The provisions do not apply to an independent review by the Inspector General.

Appellants further contend that the subpoenas are unduly burdensome because the 1990 and 1991 records sought by the Inspector General "were maintained and controlled by [appellant] J.C. Griffin, Sr., who has no mental capacity to explain the recordkeeping system utilized in 1990 and 1991 nor his dealings with the USDA during [that] time period." Appellants' Br. at 18. We do not believe that Mr. Griffin's mental incapacity has any bearing on the enforceability of the Inspector General's subpoenas. At this stage, the Inspector General is merely requesting information from appellants as part of a large investigation involving many program participants in Mitchell County. The Inspector General has not requested that Mr. Griffin explain the contents of his records or his system for maintaining them. Consequently, we are unable to conclude that the subpoenas create an undue burden upon Mr. Griffin or any of the other appellants.

Finally, appellant Draffin & Tucker, C.P.A. ("Draffin"),[5] contends that Georgia's accountant-client privilege prevents the Inspector General from obtaining records which could eventually be used against appellants under a state law theory of fraud. "[N]o confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases." *See Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 619, 34 L.Ed.2d 548 (1973); *accord In re Int'l Horizons,* 689 F.2d 996, 1004 (11th Cir.1982). Nonetheless, Draffin adduces that if the Inspector General's "investigation is an effort to establish a theory of fraud applying Georgia law," Draffin Br. at 6, Georgia's accountant-client privilege prevents the Inspector General from acquiring information which relates to that theory. Draffin's argument is without merit because, even if we were to recognize a state-created accountant-client privilege, at this stage of the Inspector General's investigation, specific claims involving questions of state law have not arisen. *See Int'l Horizons,* 689 F.2d at 1003.

III. CONCLUSION

---

[5]Draffin performs accounting work for the other appellants involved in the case. As such, many of appellants' records were subpoenaed from Draffin directly.

For the reasons set forth in this opinion, we AFFIRM the district court's decision to enforce the Inspector General's subpoenas.