[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 14, 2004
THOMAS K. KAHN
CLERK

No. 03-14264

———————————————

D. C. Docket No. 02-00126-CV-ORL-31-KRS

MOYE, O'BRIEN, O'ROURKE, HOGAN, & PICKERT,

Plaintiff-Appellee,

versus

NATIONAL RAILROAD PASSENGER CORPORATION,

Defendant- Appellant.

———————————————

Appeal from the United States District Court
for the Middle District of Florida

———————————————

**(July 14, 2004)**

Before TJOFLAT and HILL, Circuit Judges, and MILLS[*], District Judge.

RICHARD MILLS, District Judge:

---

[*]Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

We deal here with the scope of the Freedom of Information Act's Exception 5, commonly known as the "deliberative process privilege."

Specifically, we must determine whether the district court erred in concluding that the Freedom of Information Act requests made to the National Railroad Passenger Corporation by the law firm of Moye, O'Brien, O'Rourke, Hogan, & Pickert were not protected from disclosure pursuant to the "deliberative process privilege."

After a review of the record, we conclude that the material sought <u>is</u> protected from disclosure by the "deliberative process privilege" and that the district court erred in requiring the National Railroad Passenger Corporation to disclose this material.

Accordingly, we must reverse and remand.

## I. BACKGROUND

In December 1995, the National Railroad Passenger Corporation ("Amtrak") entered into a $321,000,000.00 contract with Balfour Beatty Construction, Inc., and Massachusetts Electric Construction Company ("BBC-MEC") to design and build a high-speed rail electrification system between New Haven, Connecticut, and Boston, Massachusetts. This project was referred to as the "Northeast Corridor Electrification Project," was financed with federal funds,

and was intended to construct a rail system which would enable Amtrak to operate high speed train service between Washington, D.C., and Boston. The contract set forth certain work standards and a series of payment terms.

In 1988, Congress established an Office of Inspector General ("OIG") within Amtrak. Congress established the OIG within Amtrak under the Inspector General Act of 1978, 5 U.S.C. App. 3 §§ 1-12, which created inspector generals throughout the federal government in order to combat fraud, waste, abuse, and mismanagement in federal programs and operations.

Pursuant to the terms of its statutory mandate, Amtrak's OIG conducted a series of financial and performance audits of BBC-MEC's activities since the inception of the Northeast Corridor Electrification Project. Some of these audits prompted further investigation of whether BBC-MEC committed civil and/or criminal fraud in seeking contract payments. Amtrak's OIG also conducted a series of more routine financial audits evaluating whether BBC-MEC's various claims for additional payments were proper.

On May 1, 2001, the law firm of Moye, O'Brien, O'Rourke, Hogan & Pickert ("the firm") sent Amtrak a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request which contained 21 separately numbered paragraphs and which asked Amtrak to produce documents associated with twelve routine financial

audits which Amtrak's OIG had performed with regard to the BBC-MEC's Northeast Corridor Electrification Project contract. The firm's FOIA request sought a broad array of documents, including final audit reports and associated drafts, notes, internal memoranda, and other work papers.[1]

On July 20, 2001, Amtrak issued a blanket denial of the firm's FOIA request, asserting that all of the requested documents were exempted from disclosure pursuant to all three components of FOIA's Exemption 5 (i.e., attorney work product, attorney-client privilege, and deliberative process privilege). 5 U.S.C. § 552(b)(5). On August 20, 2001, the firm filed an administrative appeal of Amtrak's decision.

However, Amtrak did not rule upon the merits of the firm's appeal. Instead, Amtrak, through a letter from its general counsel, informed the firm that Amtrak would be unable to address the merits of the administrative appeal because the documents in question were in the possession of Amtrak's OIG.

On February 2, 2002, the firm filed suit in federal district court. Specifically, the firm sued Amtrak, pursuant to 5 U.S.C. § 552(a)(4)(B)(i.e.,

---

[1]More specifically, paragraphs 1-13 sought various "audits" of the Northeast Corridor Electrification Project; paragraph 14 sought "any and all draft audit reports" during the time BBC-MEC had been involved in the project; paragraph 15 sought "any and all notes" regarding those audits; paragraph 16 sought "any and all internal memos" regarding those audits; paragraphs 17-20 sought audit documents relating to a prior contractor on the project; and paragraph 21 sought documents relating to the issues of anchor bolts on the project.

FOIA), to compel production of the requested documents. Amtrak answered the firm's Complaint by reasserting, <u>inter alia</u>, that the documents requested were exempted from disclosure by the deliberative process privilege codified in FOIA at 5 U.S.C. § 552(b)(5). On June 7, 2002, the parties consented to having the case heard by United States Magistrate Judge Karla R. Spaulding ("the district court"). The district court then held a series of scheduling conferences, ordered that responses to the firm's FOIA requests be staged, and required Amtrak to respond to the firm's requests in groups: <u>i.e.</u>, requests 1-16, request 21, and requests 17-20, in turn.[2]

On November 8, 2002, the firm moved for partial summary judgment on requests 1-16 and on request 21. On January 15, 2003, Amtrak filed a cross-motion for summary judgment as to these requests. On May 13, 2003, the district court largely denied both parties' motions, essentially concluding that the evidentiary record had not been sufficiently developed in order to determine whether Amtrak had a valid basis for asserting the deliberative process privilege

---

[2]The district court has held three bench trials on the firm's FOIA requests: one for FOIA requests 1-16 which has resulted in the instant appeal number 03-14264; FOIA request 21 which has resulted in appeal number 03-15535; and FOIA requests 17-20 which has resulted in appeal number 03-14823.

as to the requested documents.[3]

On July 28, 2003, the district court conducted a bench trial on the firm's

FOIA requests 1-16. On August 18, 2003, the district court rejected Amtrak's

assertion of the deliberative process privilege, allowed the firm's FOIA requests 1-

16, and entered an order/injunction directing Amtrak to disclose most of the

requested documents to the firm within twenty days. On September 5, 2003, the

district court stayed its order/injunction requiring Amtrak to disclose the FOIA

material requested by the firm in paragraphs 1-16 pending a resolution of

Amtrak's appeal to this Court.

## II. ISSUE

Whether the district court erred in finding that the firm's FOIA requests 1-

16 to Amtrak were not protected by the deliberative process privilege and, thus,

were not exempt from disclosure pursuant to 5 U.S.C. § 522(b)(5)?

## III. STANDARD OF REVIEW

This Court reviews a district court's conclusions of law regarding the

deliberative process privilege <u>de novo</u> and its findings of fact for clear error.

---

[3]The district court did allow the firm's motion with respect to two categories of information which had been redacted from previously disclosed documents: the identity of certain individuals named in certain financial audit statements and third party business and financial information contained in two final audit reports. Amtrak has represented in its brief that it has now disclosed this material, and therefore, these documents are no longer at issue.

Office of the Capital Collateral Counsel, N. Region of Florida *ex rel.* Mordenti v. Department of Justice, 331 F.3d 799, 802 (11th Cir. 2003); MiTek Holdings, Inc. v. Arce Eng'g Co., Inc., 89 F.3d 1548, 1554 (11th Cir. 1996).

## IV. ANALYSIS

### A. ARGUMENTS

#### 1. Amtrak

Amtrak argues that the district court erred in finding that the firm's FOIA requests 1-16 were not protected from disclosure pursuant to FOIA's Exemption 5 (i.e., the deliberative process privilege), 5 U.S.C. § 552(b)(5), for four reasons. First, Amtrak asserts that, contrary to the district court's conclusions, the protections afforded by the deliberative process privilege are not confined only to the documents reviewed by the final decision-maker. On the contrary, Amtrak contends that the deliberative process privilege extends, not only to the draft audit reports submitted for the final decision-maker's consideration, but to the internal memoranda, notes, and other work papers prepared by lower level auditors and their staff because these staff level work papers play a significant role in the deliberative process and are a vital part of the consultative process. Amtrak asserts that these documents essentially record the deliberative process and, therefore, are protected by the privilege.

7

Second, Amtrak claims that the public policy considerations underlying the privilege mandate that these documents be considered privileged. Amtrak argues that decision-making in large, hierarchical organizations frequently requires consultation and deliberation among staff and lower level officials in order to gather and analyze data, narrow the range of possible policy choices, compile and verify a factual record, and shape recommendations for a final decision. Amtrak asserts that subordinates' participation in this process requires the same protection of full and frank communications which is afforded to higher level officials; otherwise, Amtrak claims, the potential for disclosure would chill subordinates' communications and internal discussions.

Third, Amtrak argues that the district court improperly placed the burden upon it to establish that disclosure of the documents would chill communications from a particular subordinate auditor to senior auditors and, ultimately, to the decision-maker. Amtrak asserts that Congress has already determined that disclosure of deliberative materials carries a risk of chilling internal discussions, and thus, the district court erred in requiring it to make a further showing of a chilling effect.

Fourth, Amtrak argues that its detailed evidentiary submissions to the district court at the bench trial clearly established that the audit work papers

sought by the firm embodied precisely the type of advice, recommendations, and discretionary policy choices protected by the deliberative process privilege. In particular, Amtrak contends that the audit work papers record the auditors' decisions as to the methodology and scope of the planned audit, the mental impressions of interviews, documents, and other data, preliminary analyses and conclusions, supervisory review, and on-going evaluation of the audit work in progress. As such, Amtrak claims that the audit work papers document a collaborative, consultative process leading to a final audit decision and, therefore, fall squarely within the protection of the deliberative process privilege.

In short, Amtrak argues that the district court's narrow, restrictive interpretation of the deliberative process privilege is at odds with both precedent and sound public policy considerations. Amtrak contends that, contrary to the district court's finding, it carried its burden of establishing that the documents sought by the firm were both predecisional and deliberative. As such, Amtrak asks the Court to reverse the district court's order/injunction requiring them to disclose the documents sought by the firm in its FOIA requests 1-16.

2.    The Firm

The firm asks the Court to affirm the district court's holding because the district court correctly found that Amtrak had failed to carry its evidentiary burden

of proof at trial and because the district court did not commit any errors as a matter of law. Specifically, the firm asserts that the district court correctly found that Amtrak had failed to carry its evidentiary burden of proving that the audit work papers were predecisional and deliberative. The firm contends that the only deliberative process asserted by Amtrak was Gary Glowacki's (i.e., the decision-maker) decision regarding whether or not to issue a final audit report. However, the district court found that Amtrak failed to offer any evidence regarding the deliberative process employed by Glowacki in determining whether or not to issue a final audit report on the BBC-MEC contract, and the firm asserts that this finding is not clearly erroneous.

Furthermore, the firm claims that the district court applied the proper legal standards in evaluating Amtrak's claim of the deliberative process privilege. In fact, the firm notes that the district court quoted verbatim the standard set forth by this Court in prior published opinions for determining whether the privilege applies.[4]

Moreover, the firm contends that Amtrak has mischaracterized the district court's holding in that, contrary to Amtrak's assertion, the district court did not

---

[4]The firm also argues that Amtrak has waived its argument that the district court applied the wrong legal standard by failing to raise the issue to the district court during the bench trial.

limit the applicability of the deliberative process privilege to the deliberations of the decision-maker. On the contrary, the firm argues that the district court expressly recognized that the privilege could also reach a decision-maker's communications with subordinates, but the district court went on to hold that the privilege did not extend to these documents under the circumstances.

In addition, the firm argues that the district court's decision is consistent with public policy considerations relating to FOIA. Specifically, the firm contends that Congress enacted FOIA in order to permit access to information and that FOIA mandates disclosure of documents unless a specified exemption applies. The firm asserts that Amtrak's interpretation of Exemption 5 would swallow the rule and would shield almost every document within the Government's control from public scrutiny.

Finally, the firm argues that Glowacki's decision regarding whether or not to issue a final audit report is not a "decision" to which Exemption 5 applies. In short, the firm contends that the decision to issue or not to issue a final audit report does not qualify as a deliberative process affecting any agency law or policy, and thus, Amtrak cannot avail itself of the deliberative process privilege. Accordingly, the firm asks the Court to affirm the district court's order/injunction requiring Amtrak to disclose the material which it sought pursuant to its FOIA requests 1-

11

## B. DISCUSSION

FOIA requires government agencies to disclose to the public any requested documents.[5] <u>United States v. Weber Aircraft Corp.</u>, 465 U.S. 792, 793-94 (1984); 5 U.S.C. § 552(a), (b). An agency may avoid disclosure only if it proves that the documents fall within one of nine statutory exemptions. <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 136 (1975); <u>Office of the Capital Collateral Counsel</u>, 331 F.3d at 802. Because FOIA's purpose is to encourage disclosure, its exemptions are to be narrowly construed. <u>Cochran v. United States</u>, 770 F.2d 949, 954 (11th Cir. 1985)(citing <u>Department of Air Force v. Rose</u>, 425 U.S. 352, 366 (1976)). The government bears the burden of proving that a requested document is exempted. <u>EPA v. Mink</u>, 410 U.S. 73, 80 (1973); <u>Chilivis v. SEC</u>, 673 F.2d 1205, 1210-11 (11th Cir. 1982); 5 U.S.C. § 552(a)(4)(B).

"Exemption 5 protects from disclosure 'inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency.'" <u>Department of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8 (2001)(quoting 5 U.S.C. § 552(b)(5)). This

---

[5]Although Amtrak is not a federal agency, it must comply with FOIA's requirements. 49 U.S.C. § 24301(e).

provision shields those documents, and only those documents, normally privileged in the civil discovery context. Sears, Roebuck & Co., 421 U.S. at 149. "Stated simply, '[a]gency documents which would not be obtainable by a private litigant in an action against the agency under normal discovery rules (e.g., attorney-client, work- product, executive privilege) are protected from disclosure under Exemption 5.'" Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 481 (2d Cir. 1999)(quoting Providence Journal Co. v. United States Dep't of the Army, 981 F.2d 552, 557 (1st Cir.1992)); Enviro Tech Int'l, Inc. v. USEPA, 371 F.3d 370, 2004 WL 1274331, * (7th Cir. June 10, 2004)("Conversely, if a private litigant could not obtain certain records from the agency in discovery, Exemption 5 relieves the agency of the obligation to produce that document to a member of the public.").

Exemption 5 also includes a "deliberative process privilege." Nadler v. United States Dep't. of Justice, 955 F.2d 1479, 1490 (11th Cir. 1992), abrogated on other grounds by United States Dep't of Justice v. Landano, 508 U.S. 165 (1993). The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny. Klamath Water Users, 532 U.S. at 8-9.

In addition, the privilege "protect[s] against premature disclosure of

proposed policies before they have been finally formulated or adopted and protect[s] against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." Id. Thus, Exemption 5 covers documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated. Sears, Roebuck & Co., 421 U.S. at 150.

To fall within the deliberative process privilege, a document must be both "predecisional" and "deliberative." Klamath Water Users, 532 U.S. at 8. A "predecisional" document is one prepared in order to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency. Florida House of Representatives v. United States Dep't of Commerce, 961 F.2d 941, 945 (11th Cir. 1992); State of Missouri *ex rel*. Shorr v. United States Army Corps of Eng'rs, 147 F.3d 708, 710 (8th Cir. 1998). However, "the privilege does not protect a document which is merely peripheral to actual policy formation; the record must bear on the formulation or exercise of policy-oriented judgment. Material which predates a decision chronologically, but did not contribute to that

decision, is not predecisional in any meaningful sense." Grand Central P'ship, 166

F.3d at 482 (quoting Ethyl Corp. v. USEPA, 25 F.3d 1241, 1248 (4th Cir. 1994)

(internal quotation marks omitted)).

A document is "deliberative" if the disclosure of the materials would expose

an agency's decision-making process in such a way as to discourage candid

discussion within the agency and, thereby, undermine the agency's ability to

perform its functions. Shorr, 147 F.3d at 710 (citing Assembly of State of

California v. United States Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992);

Dudman Communications Corp. v. Department of Air Force, 815 F.2d 1565, 1568

(D.C. Cir. 1987)("[T]he key question in Exemption 5 cases [is] whether the

disclosure of materials would expose an agency's decisionmaking process in such

a way as to discourage candid discussion within the agency and thereby undermine

the agency's ability to perform its functions."). The underlying purpose of the

deliberative process privilege is to ensure that agencies are not forced to operate in

a fish bowl. Dow Jones & Co., Inc. v. Department of Justice, 917 F.2d 571, 573

(D.C. Cir. 1990)(quotation omitted). Therefore, courts must focus on the effect of

the material's release, Schell v. United States Dep't of Health & Human Servs.,

843 F.2d 933, 940 (6th Cir. 1988), and conclude that "[p]redecisional materials are

privileged 'to the extent that they reveal the mental processes of decision-

15

makers.'" <u>Assembly of State of California</u>, 968 F.2d at 921 (quoting <u>National Wildlife Fed'n v. United States Forest Serv.</u>, 861 F.2d 1114, 1119 (9th Cir. 1988).

Furthermore, the Supreme Court has adopted, for Exemption 5 purposes, a distinction between "factual" and "opinion" data. "Exemption 5 . . . requires different treatment for material reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." <u>Mink</u>, 410 U.S. at 89. The Supreme Court issued this mandate despite its acknowledgment that the task of drawing a line between what is fact and what is opinion can at times be frustrating and perplexing. <u>Florida House of Representatives</u>, 961 F.2d at 947. While it was delineating the contours of the privilege in <u>Sears, Roebuck & Co.</u>, the Supreme Court implicitly reaffirmed this fact/opinion distinction by noting that the focus of the deliberative process privilege was "on documents reflecting advisory opinions, recommendations and deliberations. . . ." <u>Id</u>. at 150.

Later, in <u>Federal Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill</u>, 443 U.S. 340 (1979), the Supreme Court explained that the purpose of the privilege for predecisional deliberations is to ensure that a decision-maker will receive the unimpeded advice of his associates. <u>Id</u>. at 359-60. Accordingly, the Supreme Court has held that factual information generally must be disclosed and materials embodying officials' opinions are ordinarily exempt from disclosure. <u>Petroleum</u>

16

Info. Corp. v. United States Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992)(citing Mink, 410 U.S. at 87-91)).

In the instant case, we find that the district court erred in concluding that the documents sought by the firm were not protected from disclosure pursuant to the deliberative process privilege. 5 U.S.C. § 552(b)(5). In reaching this conclusion, we agree with Amtrak's assessment that there is no real factual dispute involved in this appeal; rather, the key issue is a legal one: whether the district court correctly concluded that the audit work papers and internal memoranda sought by the firm are not protected by the deliberative process privilege because they were not considered by the final decision-maker. Because we believe that the district court took too narrow a view of Exemption 5, we must reverse and remand.[6]

Based upon the factual findings made by the district court, we believe that the audit work papers and the internal memoranda at issue are both predecisional and deliberative because Amtrak's evidentiary submissions establish that the entire body of collaborative work performed by Amtrak's OIG auditors document and contain the comments and notes authored by all levels of auditors working on

_____

[6]Our holding applies equally to the documents identified by the district court as "miscellaneous work papers." Although it is true that these documents were issued after a final audit report, the documents all pertain to decisions as to whether to conduct further audit work in light of the completed audit findings and, therefore, are protected by the deliberative process privilege for the reasons discussed infra.

the BBC-MEC assignment. Congress established Amtrak's OIG to ensure, <u>inter alia</u>, that federal funds are used for its intended purpose and to deter fraud, waste, and abuse. <u>Inspector Gen. of USDA v. Glenn</u>, 122 F.3d 1007, 1009 (11th Cir. 1997). Accordingly, Amtrak's OIG is charged with the responsibility to "provide policy direction for, and to conduct, supervise, and coordinate audits and investigations," to recommend policies for promoting efficiency and economy, and to prevent and detect fraud and waste. 5 U.S.C. App. 3 §§ 3, 4.

Furthermore, although the district court acknowledged that Amtrak's OIG issuance of a final audit reported involved certain predecisional judgments and internal consultations which are protected by the deliberative process privilege, the district court too narrowly construed the scope of the privilege. The linchpin of the district court's reasoning (and our basis for reversal) is found in paragraph fifteen of the district court's conclusions of law. Therein, the district court rejected Amtrak's assertion of privilege as to the audit work papers because "[t]here is no evidence that Glowacki reviewed any of the auditors' working papers after receiving the draft audit report from the Senior Director responsible for the audit. Therefore, I find that the information in the audit working papers was not directly involved in Glowacki's decision-making process." R/E 177.

However, the district court's ruling fails to account for the significant role

during the auditing process which the lower level staff play in Amtrak's OIG's deliberative process. Again, as Amtrak's evidence revealed and as the district court's own factual findings establish, the audit work papers document the entire body of collaborative work performed by the auditors and contain: (1) the initial work plan for the audit describing its purpose and objectives as well as the methodologies and sampling techniques which will be used to gather and analyze the audit data; (2) the staff auditors' notes and/or memoranda summarizing site visits, interviews, meetings, and/or telephone conversations which record the auditors' impressions of the information obtained and his view of the reliability of the information; (3) the auditors' preliminary calculations, findings, and conclusions as well as a description of any additional work the auditor believes is necessary in order to complete an evaluation; and (4) suggestions and critiques from the auditors' peers and superiors, including recommendations for further action.

Contrary, to the district court's finding and the firm's assertion, Amtrak need not cite to a specific policy decision in connection with which the audit work papers and internal memoranda were prepared in order for these documents to be protected from disclosure by the deliberative process privilege. As the Supreme Court has explained:

19

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

Sears, Roebuck & Co., 421 U.S. at 151-52 n. 18; Vaughn v. Rosen, 523 F.2d 1136, 1146 (D.C. Cir. 1975)("We are not saying that a 'final decision' is necessary for there to be a 'deliberative process' which is protected by Exemption 5. Rather, we cite the absence of any assured final decision as indicative of the amorphous nature of the mass of information the Government seeks to protect, i.e., the failure of the affidavits relied on to come to grips with and define what it is out of this mass of documents that the Government considers the 'deliberative process' and thus entitled to protection."). Thus, the district court erred in focusing exclusively upon whether the final decision-maker viewed the requested material rather than viewing the entire auditing process as a whole. Id. at 150 (holding that the deliberative process privilege protects "documents reflecting advisory opinions, recommendations, and deliberations *comprising part of a process* by which governmental policies are formulated.")(emphasis added). Had the district court done so, it would have determined that the audit work papers and internal

memoranda were protected by the deliberative process privilege. See <u>Hamilton</u> <u>Sec. Group Inc. v. Department of Housing and Urban Dev.</u>, 106 F. Supp. 2d 23, 29-32 (D.D.C. 2000)(holding that the Inspector General's draft audit materials are deliberative materials protected from disclosure by Exemption 5 of FOIA); <u>see</u> <u>also</u> <u>Mead Data Cent., Inc. v. United States Dep't of Air Force</u>, 575 F.2d 932, 934-35 (D.C. Cir. 1978)(concluding that "cost comparisons, feasibility opinions, and the data relevant to how the personnel involved arrived at those comparisons and opinions are policy deliberative.").

Likewise, the district court's finding that Amtrak failed to carry its burden of proof with regard to establishing the applicability of the privilege is incorrect because the district court focused solely upon the audit work papers and internal memoranda as it related directly to the decision-maker, Glowacki, rather than viewing these documents as they related to the entire auditing process. When viewed accordingly, it is clear that Amtrak established that the material was both predecisional and deliberative in character.

For example, Amtrak submitted a detailed declaration from a senior Amtrak OIG auditor, Roy Wiegand, who detailed the nature of the audit process and the role which the audit work papers play in documenting the mental impressions, advice, opinions, and recommendations of the auditors and supervisors at lower

levels of the decisional process. Wiegand's testimony was undisputed at the bench trial.[7] Thus, it is clear that this material was consultative and deliberative in nature. City of Virginia Beach, Virginia v. United States Dep't of Commerce, 995 F.2d 1247, 1253 (4th Cir. 1993) (deliberative documents broadly include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.")(internal quotation omitted).

In addition, while it is certainly true that FOIA's purpose is to encourage disclosure, it is equally true that Amtrak's OIG serves a valid public purpose and that this purpose would be hampered if lower level auditors declined to engage in open and frank discussions with supervisors and decision-makers for fear that their comments would be subjected to public scrutiny. Florida House of Representatives, 961 F.2d at 949 ("It defies reason as well as Supreme Court precedent, to then go back and weigh the policies underlying the distinction to decide whether disclosure would in fact discourage frank discussion in some specific case."). Congress established Amtrak's OIG to ensure that federal funds were being appropriately spent, and the enabling statute charged Amtrak's OIG

---

[7]Contrary to the firm's assertion otherwise, the district court did not find Wiegand's testimony incredible. In fact, the district court cited Wiegand's uncontradicted declaration as a basis for its findings on the content and purpose of the audit work papers.

22

with the responsibility of establishing appropriate audit policies, recommending policies for promoting efficiency and deterring abuse, and referring suspected civil and criminal violations to the Attorney General. 5 U.S.C. App. 3 §§ 3, 4. Amtrak's OIG cannot fulfil these duties and further these policies if the lower level staff auditors' communications with supervisors and decision-makers are chilled by the fear of having their comments made public.

Nor are we overly concerned that our ruling will necessarily result in Exemption 5 swallowing FOIA's disclosure requirements. On the contrary, in order for the deliberative process privilege to apply, the decision-making process must bear a reasonable nexus to the documents sought. Here, we find that such a reasonable nexus exists, and therefore, the audit work papers and internal memoranda sought by the firm are protected from disclosure by Exemption 5.[8]

## V. CONCLUSION

---

[8]We are not persuaded by the firm's other arguments (1) that Amtrak has waived its argument that the district court applied the wrong standard, (2) that Glowacki's decision regarding whether or not to issue a final audit is not a decision to which Exemption 5 even applies, and (3) that the audit work papers contain certain factual information which is not protected by the deliberative process privilege. Our review of the record persuades us that Amtrak has not waived any arguments for purposes of this appeal. In addition, as discussed supra, Exemption 5 is applicable to the documents sought by the firm. Finally, contrary to the district court's conclusion, the selection and sifting of factual materials (as is the case here) may itself be the product of a government agency's deliberative process and, therefore, entitled to the privilege. Lead Indus. Ass'n, Inc. v. OSHA, 610 F.2d 70, 85 (2d Cir. 1979); Montrose Chem. Corp. of California v. Train, 491 F.2d 63, 68 (D.C. Cir. 1974).

23

In sum, we find that the district court took too narrow a view of the deliberative process privilege when it restricted Exemption 5's scope to extend only to those documents which were actually reviewed by the decision-maker Glowacki. In determining whether the deliberative process privilege applied, the district court should have considered whether the documents reflected advisory opinions, recommendations, and deliberations comprising part of a process by which Amtrak's OIG auditing policies were formulated. We hold that, applying this standard, Amtrak has satisfied its burden of establishing that the material sought by the firm is both predecisional and deliberative and, thus, protected from disclosure by FOIA's Exemption 5.

Accordingly, we reverse the district court's holding that Amtrak's audit work papers and internal memoranda are not protected from disclosure pursuant to FOIA's Exemption 5 and remand this case to the district court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**