[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-12416
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 14, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:08-cv-01931-JA-GJK

ALBERT VAN BILDERBEEK,
HENDRIK VAN BILDERBEEK,

Plaintiffs - Appellants,

versus

UNITED STATES DEPARTMENT OF JUSTICE,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 14, 2011)

Before BARKETT, MARCUS and PRYOR, Circuit Judges.

PER CURIAM:

The Van Bilderbeeks appeal the summary judgment in favor of the Department of Justice and against their complaint for declaratory and injunctive relief under the Freedom of Information Act. The Van Bilderbeeks requested from the Department copies of "all documents related to" an investigation by the Drug Enforcement Administration of the Van Bilderbeeks and their company, Llanos Oil Exploration Limited. The Van Bilderbeeks filed a complaint for a declaratory judgment that the Department had violated the Act and an injunction to release the documents. After the Department released two documents and withheld other documents as exempt "investigatory records compiled for law enforcement purposes," 5 U.S.C. § 522(b)(7), the Department moved for summary judgment and submitted the declaration of an agent that described the documents withheld and the factual bases for the exemption. The Van Bilderbeeks argued that the declaration was insufficient to substantiate the exemption and that the Department had to file a Vaughn index or submit the documents for an in camera review by the district court. The district court granted summary judgment in favor of the Department. We affirm.

## I. BACKGROUND

The Department filed the declaration of Michael Seidel, a senior attorney of

the Department who provides "general legal support for the [Drug Enforcement Administration] Headquarters staff. . . involving the Freedom of Information Act" and "necessary litigation support to Assistant United States Attorneys" who prosecute cases under the Act.  Seidel stated that he was familiar with the Van Bilderbeek's complaint and the "processing file maintained by the [Freedom of Information Operations Unit of the Administration]," and that his declaration contained information "of [his] own personal knowledge" about his review of Administration "records, coordination and oversight of [the] search [by the Administration] and processing efforts, and information [he had] acquired . . . in the performance of [his] official duties to include coordination with the [Freedom of Information Operations Unit], foreign and domestic [Administration] officers, and other federal agencies."

Seidel stated that his declaration was prepared "[i]n accordance with Vaughn v. Rosen, 484 F.2d 82[0] (D.C. Cir. 1973)," and he explained how the Administration had processed the Van Bilderbeek's request for documents, discovered seven investigative files in the Narcotics and Dangerous Drugs Information System of the Administration, and classified those files.  Seidel stated that the Administration had compiled the files during "domestic and foreign criminal law enforcement investigations . . . associated with drug trafficking and

3

money laundering of illegal drug trafficking proceeds." Seidel stated that he learned from the lead agent of the investigation that the files "relate[d] to [an] ongoing investigation and/or prospective enforcement proceedings" of the Van Bilderbeeks, their company, and "other third parties."

Seidel described the documents in the files and explained that they contained sensitive material. Seidel identified eight types of documents in the files: DEA-6 Reports of Investigation; DEA Form 202; DEA Form 7a; DEA cable or teletype communications; DEA letters or memoranda; electronic communications; source documents/information; and miscellaneous administrative documents. Seidel described in detail the documents and discussed that they contained information about intelligence activities, evidence collected, communications between suspects and/or third parties, criminal activities, property acquired with drug proceeds, persons involved in transactions, confidential information about those persons, informants, and federal agents and other law enforcement personnel involved in the investigations.

Seidel stated that he used a three-step process to determine whether the individual documents in the seven files were exempt under the Act. Under the process, Seidel reviewed each document, identified the document by type, and placed each document in one of three functional categories—investigative,

administrative, and publicly known. Seidel placed two documents in the publicly known category and explained that they could be released to the Van Bilderbeeks.

Seidel classified the documents within the investigative and administrative categories into seven subcategories. He divided the investigative category into four subcategories: documentary and physical evidence, documentation of investigative activity, information exchanges between domestic and foreign agencies, and confidential source information. He divided the administrative category into three subcategories: information contained in reports of investigative activity, information related to investigative activity, and miscellaneous administrative documents. Seidel mentioned specific documents in the investigative files and types of documents that were included in each subcategory.

Seidel stated that disclosure of the documents would "interfere with enforcement proceedings," 5 U.S.C. § 522(b)(7)(A). Seidel explained that releasing the documents would enable the Van Bilderbeeks and third parties to identify "specific evidence related to [the] investigation, reveal sources, . . . expose the scope of investigative activity"; could "lead to the intimidation of potential witnesses and confidential sources, or physical harm, given the violence inherent in the international drug trafficking trade"; and would "reveal[] the scope, direction, nature, and pace of the investigation" and "thwart prospective

enforcement proceedings." Seidel also explained that the documents could not be segregated "without jeopardizing the ongoing investigation or hindering future enforcement proceedings."

The district court ruled that the withheld material was exempt under section 552(b)(7)(A) of the Act and granted summary judgment in favor of the Department. The district court ruled that the documents were compiled for law enforcement purposes based on the ongoing investigation of the Van Bilderbeeks, their company, and third parties for their involvement in drug trafficking and money laundering. The district court found that there was a "plausible basis" for the investigation in the light of the Van Bilderbeeks's "own statement that Colombian government officials [had] implicated them" in an "'international drug and money laundering organization.'" The district court ruled that the Seidel declaration provided "adequate information" about the documents that had been withheld and "how the release of each category of documents would interfere with enforcement proceedings." The district court also ruled that "the Department has explained with reasonable specificity why the records at issue cannot be further segregated."

## II. STANDARD OF REVIEW

We review de novo a motion for summary judgment and view the evidence

6

in the light most favorable to the nonmoving party. Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1243 (11th Cir. 2008). Summary judgment should be entered when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual dispute will not defeat summary judgment unless "it would affect the outcome of the suit under the governing law" and would require judgment in favor of the non-moving party. Miccosukee Tribe, 516 F.3d at 1243.

### III. DISCUSSION

The Freedom of Information Act requires a federal agency to disclose records requested by an individual. 5 U.S.C. § 552(a). That requirement is not unlimited, and an agency may withhold documents that fall within one of nine statutory exemptions. Id. § 552(b); Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp., 376 F.3d 1270, 1276–77 (11th Cir. 2004). The burden rests with the government to prove that a requested document is exempt from disclosure, Moye, 376 F.3d at 1277, and the government can satisfy its burden by affidavit testimony that "provide[s] as accurate a basis for decision as would sanitized indexing, random or representative sampling, in camera review, or oral testimony." Miscavige v. I.R.S., 2 F.3d 366, 368 (11th Cir. 1993).

We apply a two-part test to determine if documents are exempt from

7

disclosure under the Act. First, we must ensure that "the district court had an adequate factual basis" to determine that the documents were exempt. Miccosukee Tribe, 516 F.3d at 1244; Miscavige, 2 F.3d at 367. Second, we must decide if "the decision reached by the district court was clearly erroneous." Miccosukee Tribe, 516 F.3d at 1244; see Miscavige, 2 F.3d at 367.

The Van Bilderbeeks argue that Seidel's declaration is insufficient to support an exemption from disclosure for three reasons. First, the Van Bilderbeeks argue that Seidel's statements that the Administration was investigating the Van Bilderbeeks and that disclosure of the records would interfere with the investigation were unreliable because those statements were based on information Seidel received from federal agents. Second, the Van Bilderbeeks argue that the Administration lacked a plausible basis to conduct the ongoing investigation because the agency either had been tricked or had conspired with officials in the Colombian government "to manufacture a criminal 'investigation' . . . to deprive [the Van Bilderbeeks] of valuable oil rights." Third, the Van Bilderbeeks argue that the declaration "gives absolutely no information about any document or records that might be responsive to" their request for documents and that Seidel failed to "provide a 'detailed justification' of the non-segregability of any material not released." These arguments fail.

The district court did not err by relying on statements in Seidel's declaration about the investigation and the need to withhold the documents. A "declaration used to support . . . a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Although Seidel stated that he learned from "the lead DEA agent" that the seven "investigative files did indeed relate to an ongoing investigation and/or prospective enforcement action," Seidel said that he reviewed the files and observed that the "documents contain[ed] information which exempt[ed] them—in whole or in part—from disclosure under" the Act. Seidel provided first-hand information about the documents and the sensitive nature of their contents. The nature of those documents reveals that they were accumulated during an investigation of suspected criminal activity by the Van Bilderbeeks.

The district court also did not clearly err in finding that the Administration had a plausible basis to investigate the Van Bilderbeeks. The Van Bilderbeeks admitted that they had been implicated in trafficking in drugs and laundering money by officials in the Colombian government. In addition, Hendrik Van Bilderbeek has been convicted in a Colombian court of laundering money and sentenced to serve 20 years in prison. Although the Van Bilderbeeks submitted

9

three affidavits to challenge the basis of the investigation, those affidavits do not establish that the investigation was unfounded. In two of the affidavits, Hendrik Van Bilderbeek and Albert Jacques Van Bilderbeek provided self-serving statements that there were "no ongoing investigations" about them or their company "related to the continuance of the investigation under which [they] filed" a request for information under the Act. In the third affidavit, Rafael Enrique Garcia Torres, a former official in the Colombian government, states twice that a government official ordered a government agency to investigate the Van Bilderbeeks "based on an investigation [already] being carried out by the DEA in the United States," which suggests that the investigation of the Administration is unrelated to any action by the Colombian government. Notably, Torres was arrested for "allegedly manipulat[ing] the data of" the Administrative Safety Department in Colombia "to favor[, in part,] . . . alleged drug traffickers . . . ." The district court was not required to examine further the decision of the Administration to investigate the Van Bilderbeeks. See Arenberg v. Drug Enforcement Admin., 849 F.2d 579, 581 (11th Cir. 1988).

Seidel's declaration provided a sufficient factual basis for the district court to determine that the documents were exempt from disclosure. Seidel identified in detail the contents of the records and documents, which provided insight into the

10

types of information in particular documents and the close proximity of information that made the documents non-segregable. As explained by Seidel, the documents contained information about the evidence collected, investigators, and informants, the disclosure of which would not only hamper the investigations but also endanger the individuals identified in the documents. The Van Bilderbeeks seek more detailed information about the documents to justify their exemption, but "an adequate factual basis can be established in this Circuit by affidavits alone," Miccosukee Tribe, 516 F.3d at 1260, particularly when the supporting document contains the level of specificity provided by Seidel, see Miscavige, 2 F.3d at 368.

The district court did not clearly err when it found that disclosure of the documents would "interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A). The Department did not seek to withhold all the documents found in the Van Bilderbeek's investigatory files. See N.L.R.B. v. Robbins Tire & Rubber Co., 437 U.S. 240, 236, 98 S. Ct. 2311, 2324 (1978) (acknowledging that Congress amended "Exemption 7 . . . to eliminate 'blanket exemptions'"); Miscavige, 2 F.3d at 367 ("It is well established in this Circuit that in most situations blanket objections . . . will not suffice for disposition of FOIA claims."). In fact, the Department reviewed each document and determined that two documents did not qualify for the exemption "because the information [was]

11

publicly known or [was] not reasonably expected to interfere with law enforcement proceedings."  The Department sought to exempt the other documents because they contained sensitive material that would thwart an active investigation.  See Robbins Tire, 437 U.S. at 236, 98 S. Ct. at 2323–24 (approving "generic determinations of likely interference" when "disclosure of particular kinds of investigatory records while a case is pending would generally 'interfere with enforcement proceedings'"); see also Moorefield v. U.S. Secret Serv., 611 F.2d 1021 (5th Cir. 1980) (approving the exemption of records of the Secret Service compiled against an individual "of interest" to the Service because he had been twice convicted of threatening the life of the President of the United States).  The reasons Seidel gave for nondisclosure are more than sufficient to support the withholding of the documents.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of the Department.