Amy Totenberg, United States District Judge
This Freedom of Information Act ("FOIA")[1] case is before the Court on Defendant Internal Revenue Service's Motion for Summary Judgment [Doc. 38] and Plaintiff Robert Greenberger's Motion for Partial Summary Judgment [Doc. 42]. Mr. Greenberger is an Atlanta-area accountant and the subject of an IRS examination into his preparation of conservation easement partnership returns for some of his clients in 2010, 2011, and 2012.
A conservation easement is a permanent agreement between a property owner and a land trust, non-profit, or government entity through which the owner gives up some of her rights of ownership in order to advance conservation purposes. The easement allows the property owner to claim a federal tax deduction for up to 50 percent of the owner's adjusted gross income (and 100 percent if she is a rancher or farmer). However, according to the IRS, this deduction is sometimes susceptible to abuse, such as when taxpayers "armed with questionable appraisals[ ] take inappropriately large deductions for easements,"[2] or when promoters "syndicate ownership interests in [a partnership] that owns the real property" to assist investors in "claim[ing] charitable contribution deductions in amounts that significantly exceed the amount invested." Internal Revenue Service, Notice 2017-10 : Listing Notice-Syndicated Conservation *1359 Easement Transactions (noting that certain syndicated conversation easement transactions may be "tax avoidance transaction[s]") available at https://www.irs.gov/irb/2017-04_IRB#NOT-2017-10 (last accessed September 26, 2017).
This alleged potential for abuse is what apparently made Greenberger a person of interest to the IRS. Greenberger's records were subpoenaed by the IRS, and the agency's examination remains ongoing, years after it started. In response to the examination, Mr. Greenberger submitted two FOIA requests. In a nutshell, he seeks the IRS's investigation file concerning him. When the IRS failed to respond to Mr. Greenberger's second FOIA request to his satisfaction, he filed this suit to enforce it. During the course of responding to Mr. Greenberger's request and this litigation, the IRS searched for and disclosed the existence of some 27,000 pages of responsive records. It has withheld virtually all of those records by asserting a number of exemptions under FOIA. For example, the IRS claims that almost every document is protected under Exemption 7A, which allows an agency to withhold information connected to an ongoing law enforcement investigation if release would be reasonably likely to interfere with that investigation. 5 U.S.C. § 552(b)(7)(A). The IRS similarly claims it cannot disclose large chunks of documents to Greenberger because they include the tax return information of third parties, and a federal statute- 26 U.S.C. § 6103 -precludes the disclosure of those records. For the reasons stated herein, the Court GRANTS the IRS's Motion and DENIES Greenberger's.
I. Standard for Summary Judgment
The Court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. The motion should be granted only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249, 106 S.Ct. 2505.
When ruling on the motion, the Court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. See Reeves v. Sanderson Plumbing Prods., Inc. , 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The moving party need not disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. See Celotex Corp. v. Catrett , 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets this initial burden, in order to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324-26, 106 S.Ct. 2548. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson , 477 U.S. at 251-52, 106 S.Ct. 2505.
The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed.
*1360 Am. Bankers Ins. Group v. United States , 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. Id. The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." United States v. Oakley , 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. Id. at 1555-56.
II. Facts
Robert Greenberger is a certified public accountant with more than thirty years of experience. (Internal Revenue Service's Response to Plaintiff's Statement of Undisputed Material Facts ("IRS's Resp. SMF") ¶ 1.) On or about October 23, 2013, the IRS sent Greenberger a Notice of Examination seeking to determine if Greenberger should be held liable for promoter or preparer penalties in connection with conservation easement partnership returns he prepared for clients in 2010, 2011, and 2012. (Id. ¶¶ 3-4, 7; Declaration of William E. Buchanan ¶ 6.) Specifically, the IRS "is examining [Greenberger's] conduct to determine whether he may have violated certain provisions of the [Tax] Code in connection with his involvement with conservation easement partnerships or arrangements or while preparing federal tax returns for conservation easement partnerships or ... on which a charitable donation deduction was claimed arising from a conservation easement." (Declaration of Deborah Fitzpatrick ("Fitzpatrick Decl.") ¶ 3.)[3] The IRS then "audited conservation partnership returns that [Greenberger] prepared for 2010, 2011, and 2012." (IRS Resp. SMF ¶ 8.) As the examination proceeded, Greenberger claims that his relationship with his clients deteriorated. (Robert Greenberger's January 6, 2016 Declaration ¶¶ 44-49.) On January 27, 2014, Greenberger sent his first FOIA request to the IRS concerning its examination. (IRS's Resp. SMF ¶ 15.) That request is not the subject of this suit. On or before August 4, 2015, the IRS referred the investigation to the Department of Justice's Tax Division. (Id. ¶ 20.)
Greenberger sent a second FOIA request on August 25, 2015 to the IRS, seeking access to records regarding the IRS's investigation of him. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Pl.'s Resp. SMF) ¶ 6; Doc. 4, Ex. A.)
The FOIA request asked for the following records:
• Any and all information that shows that Robert N. Greenberger made or furnished or caused another person to make or furnish (in connection with such organization or sale) a statement with respect to the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit by reason of holding an interest in the entity or participating in the plan or arrangement that Robert N. Greenberger knew or had reason to know is false or fraudulent as to any material matter;
• Any and all information that shows that Robert N. Greenberger aided or *1361 assisted in, procured, or advised with respect to, the preparation or presentation of any portion of a return, affidavit, claim or other document, and where Robert N. Greenberger knew or had reason to believe that such a portion will be used in connection with any material matter arising under the internal revenue laws, and where Robert N. Greenberger knew that such portion (if so used) would result in an understatement of the liability for tax of another person;
• Any and all information which shows that Robert N. Greenberger participated in tax avoidance transaction(s);
• Any and all information that penalties and injunctions under Internal Revenue Code sections 6694, 6695, 6700, 6701, 7402, 7407 and 7408 for promoting and/or preparing documents are applicable to Robert N. Greenberger;
• Any and all information that shows that Robert N. Greenberger made, created, or took any of the following actions identified in I.R.M. 4.32.2.2.3 to include:
• False statements about the allowability of tax benefits to participants that are contrary to clearly established law.
• Misuse of IRC sections to produce clearly unintended results;
• Intentional manipulation of potential ambiguities of the tax laws to improperly claim tax benefits.
• Sham arrangements having no economic significance or business purpose other than the avoidance or evasion of tax.
• Substantial valuation misstatements that ascribe a value to an asset or service that is at least twice the correct value and result in a tax reduction.
• Noncompliance with disclosure requirements of IRC § 6111, Disclosure of Reportable Transactions.
• Noncompliance with material advisors with list maintenance requirements of IRC § 6112, Material Advisors of Reportable Transactions Must Keep Lists of Advisees, etc.
• Attempts to impede the proper administration of tax laws;
• Any and all information the Lead Development Center received concerning Robert N. Greenberger's role as potential promoter of an abusive tax avoidance transaction;
• Copies of the 'reviewed materials regarding your participation in tax avoidance transactions' as identified in the first sentence of your correspondence on October 23, 2014 to Robert N. Greenberger;
• Copies of any pre-filing notification letters to the persons who have participated in these transactions;
• Copies of all documents prepared or used in evaluating whether penalties, injunction, and/or 'pre-filing notification' is appropriate for Robert N. Greenberger;
• Copies of any and all consents or waivers executed by Robert N. Greenberger;
• Copies of any and all administrative files, whether in written or electronic (computer) form, including, without limitation, any and all revenue agent's reports, advisory opinions, notes, interviews, workpapers, protests, memoranda, correspondence, computations, summaries, discussions, agreements regarding disposition, documents relating to the review and issuance of the October 23, 2013 Information Document Request *1362 'Subject: IRC 6700/6701 Investigation Submitted to: Robert N. Greenberger,' the Quality Review Staff, filing or photographic, valuation, or other documents, and drafts of these materials addressing, or in any manner relating to Robert N. Greenberger;
• Copies of any and all files, whether in written or electronic (computer) form, including, without limitation, any and all appellate conferee reports, closing actions, supporting statements, advisory opinions, notes, interviews, workpapers, memoranda, correspondence, computations, summaries, discussions, agreements regarding disposition, other documents and drafts of these materials addressing the potential promoter liability of Robert N. Greenberger;
• Any documents which form the basis of the October 23, 2013 Information Document Request issued to Robert N. Greenberger;
• The documents requested in [the] paragraphs ... above includes without limitation originals, copies, non-identical copies, facsimilies, preliminary, intermediate and final drafts, modifications, changes and amendments, as well as audio or visual reproductions of all statements, conversations, or events and any materials stored in a computer readable form;
• Any and all communications in connection with the promoter liability of Robert N. Greenberger including, but not limited to correspondence, memoranda, interoffice or intra-office communications, E-mail, analysis, study, maps, statistical data, and computer records within your possession, custody or control;
• Notwithstanding the above requests, no request [was] made for the DIF score.
(Amended Complaint, Ex. A.; Doc. 4-1.)
Shira Washington, a Senior Disclosure Specialist in the IRS's Office of Privacy, Governmental Liaison, and Disclosure, received Greenberger's FOIA request on September 1, 2015. (Pl. Resp. SMF ¶ 7.) She began her search through the IRS's Integrated Data Retrieval System ("IDRS"), a central database that the IRS uses to maintain taxpayer accounts. (Id. ¶¶ 5, 7.)[4] Ms. Washington searched the IDRS database and identified open examinations of Mr. Greenberger for the 2009-11 tax years and open audits of Mr. Greenberger's personal income taxes for the 2009-11 tax years. (Declaration of Shira Washington ("Washington Decl.") ¶ 7, 10-12.)[5] However, after Ms. Washington chased these records down, she discovered they related only "to exams of Plaintiff's personal returns, [ ] not ... a promoter examination or promoter investigation, which was a topic of the FOIA request." (Washington Decl. ¶¶ 13.) Ms. Washington *1363 then contacted IRS counsel Chris Pavilonis, who was "the IRS Counsel attorney working on" the promoter investigation of Greenberger. (Declaration of Chris Pavilonis ("Pavilonis Decl.") ¶¶ 1-2; Pl.'s Resp. SMF ¶ 11-12.) Pavilonis searched his own files (both paper and electronic) and his e-mails for responsive records, and obtained "all of the files of IRS Associate Area Counsel Attorney John Arthur, who had previously been assigned to the investigation," including Arthur's paper file, e-mails, and written notes. (Pavilonis Decl. ¶ 7.) Pavilonis also provided to Washington an IRS Revenue Agent's Injunction Referral Report (and its exhibits and addendums). (Id. ) Pavilonis and Washington also obtained responsive files from the files of Revenue Agents Ellie Pennington and Mary Carter, (Pl.'s Resp. SMF ¶ 15; Pavilonis Decl. ¶¶ 9-11), and Pavilonis collected responsive files from Jeanette Czachur, a Senior Program Analyst in the IRS's Small Business/Self-Employed department who "helped coordinate the investigation on the IRS side (as opposed to [the] IRS Counsel side)." (Pavilonis Decl. ¶ 11.) Finally, the IRS gathered the "return information of the partnerships and other business entities that had records responsive to the FOIA request," but did "not gather the exam files and return information of the individual members of every partnership who received the flow-through tax benefits of deductions taken by the partnership." (Pavilonis Decl. ¶ 13.)[6]
Pavilonis transferred the collected files to Washington on or around December 2, 2015. (Pavilonis Decl. ¶ 16.) Washington received them on December 9, 2015, and sent them to IRS Chief Counsel Elizabeth Rawlins. (Washington Decl. ¶ 23.) The case was reassigned to Julie Schwartz, Senior Counsel in Branch 6 of the Office of the Associate Chief Counsel-Procedure and Administration, located within IRS's Office of Chief Counsel. (Declaration of Julie C. Schwartz ("Schwartz Decl.") ¶¶ 1, 7.) Branch 6 of the Office of the Associate Chief Counsel provides subject matter experts "for disclosure and privilege matters ... arising in the context of tax litigation, the Freedom of Information Act ... or summons enforcement." (Schwartz Decl. ¶ 1.)
Schwartz avers that the IRS received 26,910 responsive pages from the sources described above. (Id. ¶ 7.) Greenberger disputes this number, and claims that the IRS identified at least 27,167 pages. (Pl.'s Resp. SMF ¶ 22.) The IRS claims it provided 1,042 pages in full and 57 pages in part to Greenberger. (Schwartz Decl. ¶ 8.) Greenberger claim that 1,094 pages were provided to him in full, and 57 in part. (See Pl.'s Resp. SMF ¶ 22.) The IRS also determined that there are "no other records responsive to [Greenberger's] request that could be located that would not be categorically exempt from disclosure as third party return information protected under FOIA exemption (b)(3) in conjunction with IRC § 6103(a)." (Schwartz Decl. ¶ 9.)[7]
Schwartz reviewed the documents in conjunction with two other IRS attorneys. (Id. ¶¶ 3, 9.) On March 17, 2016, the Court directed the IRS to produce a list of general categories of documents and a list of tax returns prepared by Greenberger that were in the IRS's possession. (IRS's Resp. SMF ¶ 31.) The IRS created a list that was *1364 not terribly helpful, because it withheld the names of the third-party taxpayers. The Court then ordered the IRS to engage in a rolling production of documents. (Id. ¶ 34.) The IRS produced the documents in rolling fashion during the summer of 2016. (Id. ¶¶ 35, 36, 39, 42.) The vast majority were withheld.
The IRS claims that it withheld these responsive documents under several different FOIA exemptions:
• FOIA Exemption 3, which allows for withholding documents "specifically exempted by statute" (under certain conditions), in conjunction with IRC § 6103, which prevents the disclosure of return information of taxpayers;
• FOIA Exemption 7A, which permits withholding records or information compiled for law enforcement purposes if disclosure could reasonably be expected to interfere with enforcement proceedings;
• FOIA Exemption 7C, which permits withholding information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy;
• FOIA Exemption 7E, which permits withholding records or information compiled for law enforcement purposes if disclosure "would disclose techniques and procedures for law enforcement investigations ... or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."
• FOIA Exemption 5 in conjunction with the attorney-client and deliberative process privileges. FOIA Exemption 5 permits withholding "inter-agency or intra-agency memorandums or letters that would not be available by law to a party ... in litigation with the agency."
• FOIA Exemption 6, which protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."
(See Fitzpatrick Decl. ¶¶ 6; 18-22; Schwartz Decl. ¶¶ 20-24.) The Court notes that here it is simply describing the stated basis of the IRS's refusal to disclose certain documents, not the validity of such refusal.
The IRS created a Vaughn index, see Vaughn v. Rosen , 523 F.2d 1136 (D.C. Cir. 1975), in connection with this litigation, which sets forth categories of documents that are responsive to Mr. Greenberger's request, identifies if those documents were produced in full, in part, or not at all, and identifies a FOIA exemption and provides an explanation for the IRS's refusal to provide those documents. (Doc. 38-10.)
The parties dispute whether or not the IRS's investigation of Greenberger is "ongoing." (Pl.'s Resp. SMF ¶ 27.) However, as discussed below, it is obvious that the investigation is in fact still ongoing. Greenberger has not provided any actual evidence to the contrary. And the IRS confirmed on September 18, 2017 that its investigation has not concluded. (Doc. 48.)
III. Discussion
A. Legal Standards for FOIA Searches and the Assertion of FOIA Exemptions
Congress adopted the Freedom of Information Act as a searchlight to encourage open disclosure of public information.
*1365 Baldrige v. Shapiro , 455 U.S. 345, 351, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982) ; NLRB v. Robbins Tire & Rubber Co. , 437 U.S. 214, 220-21, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) ; Chilivis v. SEC. , 673 F.2d 1205, 1210-11 (11th Cir. 1982). The intent of FOIA is to balance the public's need for access to information with the Government's need, under some circumstances, for confidentiality. Weinberger v. Catholic Action , 454 U.S. 139, 144, 102 S.Ct. 197, 70 L.Ed.2d 298 (1981) ; Chilivis , 673 F.2d at 1210 ; Judicial Watch, Inc. v. U.S. Dep't of Treasury , 796 F.Supp.2d 13, 22-23 (D.D.C. 2011) (quoting United Techs. Corp. v. U.S. Dep't of Defense , 601 F.3d 557, 559 (D.C. Cir. 2010) ("The strong interest in transparency must be tempered, however, by the legitimate governmental and private interests [that] could be harmed by release of certain types of information.") ).
FOIA is a "broad disclosure statute which evidences a strong public policy in favor of public access to information in the possession of federal agencies." Ray v. U.S. Dep't of Justice , 908 F.2d 1549, 1554 (11th Cir. 1990)rev'd on other grounds, U.S. Dep't of State v. Ray , 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), (quoting Cochran v. United States , 770 F.2d 949, 954 (11th Cir. 1985) ) (internal quotations and citations omitted). "[D]isclosure, not secrecy, is the dominant objective of the Act." Dep't of Interior v. Klamath Water Users Protective Ass'n , 532 U.S. 1, 7-8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (quoting Dep't of Air Force v. Rose , 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976) ).
FOIA mandates disclosure of a federal agency's records, upon request, unless the documents fall within certain enumerated statutory exemptions permitting agencies to withhold information from FOIA disclosure. Klamath Water Users Protective Ass'n , 532 U.S. at 7, 121 S.Ct. 1060 (citing 5 U.S.C. §§ 552, 552(b) ); see also Chilivis , 673 F.2d at 1210-11 ("[R]ecords and documents held by federal agencies are presumed subject to disclosure unless the agency can establish that the material falls into one of the FOIA's nine exemptions."); Coastal States Gas Corp. v. Dep't of Energy , 617 F.2d 854, 862 (D.C. Cir. 1980) ("The clear purpose of the FOIA is to assure that the public has access to all government documents, subject to only nine specific limitations, to be narrowly interpreted, which Congress decided were necessary to protect our national interests and permit the efficient operation of the government.") Because the presumption favors disclosure, FOIA must be construed broadly and its exemptions must be construed narrowly. Ray v. U.S. Dep't of Justice , 908 F.2d at 1554 ; Klamath Water Users Protective Ass'n , 532 U.S. at 8, 121 S.Ct. 1060 (quoting U.S. Dep't of Justice v. Tax Analysts , 492 U.S. 136, 151, 109 S.Ct. 2841, 106 L.Ed.2d 112 (1989) ) ("[c]onsistent with the Act's goal of broad disclosure, these exemptions have been consistently given a narrow compass"); FBI v. Abramson , 456 U.S. 615, 630, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982) ("FOIA exemptions are to be narrowly construed"); Chilivis , 673 F.2d at 1211.
When the government seeks to invoke an exemption from disclosure, it bears the burden of proving that the exemption applies. Ray , 908 F.2d at 1554 (citing Cochran v. United States , 770 F.2d at 954 and Dep't of the Air Force v. Rose , 425 U.S. 352 at 361, 96 S.Ct. 1592) ; Ely v. FBI , 781 F.2d 1487, 1489-90 (11th Cir. 1986) (an agency has the burden of proving that it properly invoked any FOIA exemptions when it decided to withhold information); Assassination Archives & Research Ctr. v. CIA , 334 F.3d 55, 57 (D.C. Cir. 2003) (the government agency has the burden to demonstrate that the documents requested are exempt from disclosure).
*1366 FOIA provides for judicial review of agency FOIA decisions and "[o]n complaint, the district court of the United States ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). FOIA cases are generally handled on motions for summary judgment. Miccosukee Tribe of Indians of Florida v. United States , 516 F.3d 1235, 1243 (11th Cir. 2008) ; Miscavige v. IRS , 2 F.3d 366, 369 (11th Cir. 1993).
An agency is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record was either produced to the plaintiff or is exempt from disclosure. Weisberg v. U.S. Dep't of Justice , 627 F.2d 365, 368 (D.C. Cir. 1980). In the FOIA context, summary judgment is justified if the affidavits or other documents describe the documents and "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State , 565 F.3d 857, 862 (D.C. Cir. 2009) (citing Miller v. Casey , 730 F.2d 773, 776 (D.C. Cir. 1984) ); Military Audit Project v. Casey , 656 F.2d 724, 738 (D.C. Cir. 1981). See also Miscavige v. IRS , 2 F.3d at 368 ("we hold that in certain cases, affidavits can be sufficient for summary judgment purposes in an FOIA case if they provide as accurate a basis for decision as would sanitized indexing, random or representative sampling, in camera review, or oral testimony"); Miccosukee Tribe of Indians of Florida , 516 F.3d at 1257-58 (noting that a trial court may utilize various methods depending on the circumstances of the case, including, agency affidavits to determine whether an adequate factual basis exists for the agency's disclosure of information in response to a FOIA request).
In reviewing a motion for summary judgment under FOIA, the court must view the facts in the light most favorable to the requester. Burka v. U.S. Dep't of Health and Human Servs. , 87 F.3d 508, 514 (D.C. Cir. 1996).
B. Adequacy of the Search
Greenberger first challenges the adequacy of the IRS's search. An agency's FOIA search need not be perfect or exhaustive. Lee v. U.S. Attorney for S.D. Fla. , 289 Fed.Appx. 377, 380 (11th Cir. 2008). Instead, at summary judgment the IRS "must show beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents." Ray , 908 F.2d at 1558. This burden is satisfied if the agency provides affidavits describing its search that are "relatively detailed, non-conclusory, and submitted in good faith." Id. The affidavits should include what records were searched, who did the search, and what search terms or processes were used. See Judicial Watch., Inc. v. Dep't of the Navy , 971 F.Supp.2d 1, 2 (D.D.C. 2013).
Once the IRS meets its initial burden, Greenberger must rebut the IRS's evidence by showing that the search was not reasonable or not in good faith. Ray , 908 F.2d at 1558. A plaintiff can rebut an agency declaration supporting the adequacy of a search by raising "substantial doubt[s] as to the reasonableness of the search, especially in light of well-defined requests and positive indications of overlooked materials." Founding Church of Scientology of Washington, D.C. v. NSA , 610 F.2d 824, 837 (D.C. Cir. 1979).
Here, the IRS has satisfied its initial burden by producing several detailed affidavits *1367 from IRS employees that demonstrate that the search was "reasonably calculated to uncover all relevant documents." Ray , 908 F.2d at 1558. Washington and Pavilonis show that they obtained the documents of every major government employee involved in the investigation. (Washington Decl. ¶¶ 3-15; Pavilonis Decl. ¶¶ 5-13.) Their affidavits are "relatively detailed, nonconclusory, and submitted in good faith." Ray , 908 F.2d at 1558.
Greenberger nonetheless challenges this search for several reasons. (Greenberger's Cross-Motion, Doc. 42-1 at 32.) First, he argues that the IRS's acknowledgement that it did not gather returns related to individual members of the partnerships whose returns were under scrutiny is enough to undercut the adequacy of the search. Second, Greenberger claims the search is suspect because "substantial pages remain missing," as the IRS "previously identified 30,000 pages, but now says it only produced 26,910 pages." (Id. ) Third, he argues that the "sliver of documents the IRS did produce list[ed] roughly 40 involved people whose files were not searched." (Id. ) Fourth, Greenberger argues that the IRS's count of the reviewed pages was inaccurate.
Greenberger's first contention is without merit because he plainly seeks "returns related to individual partners." (Doc. 42-1 at 32.) But FOIA "only imposes a duty to search for records in response to a request ... that complies with an agency's published rules and procedures" for filing a FOIA request. Hull v. IRS , 656 F.3d 1174, 1193 (10th Cir. 2011). The IRS's regulations provide that a FOIA request seeking a third party's return information "must provide that third party's authorization." Id. (citing 5 U.S.C. § 552(a)(3)(A) & (C) and 26 C.F.R. § 601.702(c)(4)(i)(E) & (c)(5)(iii)(C) ). This meant that the IRS was permitted to categorically withhold the return information of third parties without examining those records unless Greenberger provided third-party authorizations. Hull , 656 F.3d at 1193. Greenberger has not presented evidence suggesting he had obtained any such authorizations, and so this objection must be rejected. Id. at 1188 (holding that IRS properly refused to search for or review a party's request for a third party's return information, because the requested had not obtained authorization and "only a valid FOIA request can trigger an agency's FOIA obligation.")
Second, Plaintiff's argument that pages are "missing" has no basis in fact. Greenberger argues that Kieran Carter stated that the IRS possessed 30,000 responsive pages in a conference with the Court. But Carter has since affirmed in an affidavit that this was just an "estimate by IRS Counsel Elizabeth Rawlins" before a "formal count of the responsive documents" had been completed. (Declaration of Kieran Carter ("Carter Decl.") ¶ 2.) And a discrepancy between an agency's estimate of how many documents it expects to uncover and the number it actually does uncover is not enough to render the search "inadequate." DiBacco v. U.S. Army , 795 F.3d 178, 195 (D.C. Cir. 2015) (holding that an agency's search was not inadequate just because it estimated it would find 251,000 to 775,000 pages of responsive documents but instead only located 115,000 pages).
Third, Greenberger claims that the IRS's search was inadequate because it did not search the files of 40 individuals mentioned in the Vaughn index. But the mere fact that these individuals were mentioned does not suggest that the IRS's search wasn't reasonably calculated to locate responsive documents. FOIA demands a reasonable search, not a perfect one. Francis v. U.S. Dep't of Justice , 267 F.Supp.3d 9, 11-12 (D.D.C. 2017) ("Agencies need not scour every database, but rather should conduct a "good faith, reasonable *1368 search of those systems of records likely to possess requested records.") (citation omitted). Importantly, Plaintiff's FOIA request was exclusively directed at obtaining information related to the IRS's investigation of him. But Plaintiff failed to identify why a search of those 40 individuals was necessary to render the search adequate, when the IRS's affidavits establish that it searched the records of every individual who has had a significant role in the investigation that prompted the FOIA request and that those individuals provided to IRS counsel their entire case files. IRS counsel then conducted a manual search and reviewed "all records at issue in this litigation." (Schwartz Decl. ¶ 9.) The IRS then determined that the only remaining material was exempt third-party return information which, as discussed below, the IRS is not required to produce. (Id. ) Greenberger provides no explanation as to why he believes these individuals would possess responsive documents not already identified by the IRS-he simply assumes it.[8] And importantly, it appears that many of these individuals (a list of which neither party actually bothers to compile) engaged in e-mail correspondence about the investigation with individuals who did turn over responsive files-meaning the e-mails have been obtained and disclosed on the Vaughn index.
Fourth, the discrepancies in the parties' page counts does not render the search inadequate. The IRS cites to two cases, Budik v. Dep't of the Army , 742 F.Supp.2d 20, 33 (D.D.C. 2010) and Fischer v. U.S. Dep't of Justice , 723 F.Supp.2d 104, 108 (D.D.C. 2010), both of which are persuasive on this point. In Fischer , the court held that the FBI's inconsistent reports as to the number of responsive files might have been a mistake, but it was not "bad faith" sufficient to show that the search was inadequate. In Budik , the court held that a discrepancy in page counts prevented, under the circumstances of that case, the court from determining if exemptions were properly asserted. But it did not indicate that the search was in bad faith. 742 F.Supp.2d at 33.
The IRS has met its burden in demonstrating it conducted a reasonable search. Ray , 908 F.2d at 1558. Greenberger has failed to present evidence that creates a material dispute of fact about the search's adequacy. The Court therefore GRANTS summary judgment in favor of the IRS and against Greenberger as to whether the IRS's search was adequate.
C. The IRS's Asserted Exemptions
The IRS asserted several exemptions for all but roughly 1,000 pages it identified during its search. Greenberger challenges them all. For the reasons discussed below, the Court focuses only on the third party return information exemption and the law enforcement exemption. The Court finds that these exemptions have been properly asserted and justify withholding the documents from Greenberger.
1. Third Party Return Information
Greenberger seeks federal returns that he prepared for clients for filing with the IRS, along with materials that he or his firm gave to the IRS as part of the IRS's conservation easement partnership returns investigation. (Plaintiff's Motion, Doc. 42-1 at 10.) He claims (1) no privacy concerns can arise from giving him information he provided to the IRS; (2) that he *1369 has a right under 26 U.S.C. § 6103(c) to material the IRS has gathered on him, including third-party return information; and (3) that he is entitled under 26 U.S.C. § 6103(h)(4)(C) to "transactionally related" partner returns that were included in his file. For these reasons, he argues that the documents identified in Vaughn index lines 6 through 43, 97, 153-155, and 159 through 187 should be disclosed. (Doc. 42-1 at 23.)
The IRS argues that it is precluded from disclosing this information because 26 U.S.C. § 6103(a) prevents the government from disclosing "any return" or "return information" of a third-party taxpayer to Greenberger. This is because "while FOIA's basic aim is sunlight, Congress decided that with respect to return information, confidentiality, not sunlight, is the proper aim." Hull v. IRS, U.S. Dep't of Treasury , 656 F.3d 1174, 1178 (10th Cir. 2011) (citations and internal quotation marks omitted).
Return information is defined in § 6103 as:
a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, or other imposition, or offense...
26 U.S.C. § 6103(b)(2)(A) ; Tax Analysts v. IRS , 117 F.3d 607, 611 (D.C. Cir. 1997). This definition is "very broad" and "reaches far beyond what the phrase 'return information' would normally conjure up." Cause of Action v. IRS 125 F.Supp.3d 145, 163 (D.D.C. 2015). The term has "evolved to include virtually any information collected by the Internal Revenue Service regarding a person's tax liability." Landmark Legal Found. v. IRS , 267 F.3d 1132, 1135 (D.C. Cir. 2001).
FOIA works in conjunction with § 6103 to prevent the disclosure of taxpayer return information. 5 U.S.C. § 552(b)(3) -known as Exemption 3-allows an agency to refuse to disclose information in response to a FOIA request if the information is "specifically exempted from disclosure by statute." Section 6103 is "the sort of nondisclosure statute contemplated by FOIA exemption 3." Tax Analysts , 117 F.3d at 611. "To paraphrase exemption 3, § 6103 is a statute specifically exempting certain matters from disclosure to the general public and leaving the IRS with no discretion to reveal those matters publicly." Tax Analysts , 117 F.3d at 611. Thus § 6103 prevents disclosure of "return information" in response to a FOIA request unless one of its exceptions applies.
Section 6103 is directly applicable to Greenberger's request for the third-party returns that he prepared and to documents identified on Lines 97, 153-55, and 159 through 187 of the Vaughn index. Greenberger concedes some of this material is return information. He asks for "[c]onservation related returns Bob prepared." (Doc. 45 at 8.) He notes he sought for the IRS to "simply provide a list of the requested returns which Bob prepared." (Doc. 45 at 7.) And he claims he is entitled to "the (summonsed) federal returns which he prepared for filing with the IRS." (Doc. 45 at 15.) But in any event, he would be hard-pressed to argue that the materials identified in the Vaughn index are not return information. Most of the items in lines 6 through 43 of the index are described *1370 as "[c]opy of tax return of taxpayer other than plaintiff." (Doc. 38-10 at 1-2.)
It is readily apparent that other items challenged by Greenberger are also return information. Line 97 of the index describes a form analyzing a deduction claimed by a third party taxpayer. (Doc. 38-10 at 5.) Lines 153 through 155 cover letters describing third-party donations of a conservation easement. (Doc. 38-10 at 8.) Lines 159 through 187 of the index cover real estate documents and other information concerning the conservation easements of third parties. All of this falls within the broad ambit of "return information," including "data" collected with "respect to the determination of the existence, or possible existence, of [tax] liability." 26 U.S.C. § 6103(b)(2)(A).[9] For example, it is hard to conceive how real estate documents would not disclose the identity of third-party taxpayers-something that is encompassed within the meaning of "return information." Landmark , 267 F.3d at 1134.
Greenberger next insists that multiple exemptions under § 6103 apply. He argues that 26 U.S.C. § 6103(h)(4) provides that "a return or return information may be disclosed" in a federal proceeding "pertaining to tax administration" if "the treatment of an item reflected on such return is directly related to the resolution of an issue in the proceeding" or "if such return or return information directly relates to a transactional relationship between a person who is a party to the proceeding and the taxpayer which directly affects the resolution of an issue in the proceeding." He claims that this FOIA suit is a "proceeding" that pertains to "tax administration." (Doc. 45 at 17.)
Both the plain language of 26 U.S.C. § 6013(h) and binding authority from the former Fifth Circuit forecloses this result. First, § 6013(h) only applies to "[d]isclosure to certain Federal officers and employees for purposes of tax administration, etc." By its own terms, this provision does not apply to disclosures to private individuals.[10]
The former Fifth Circuit agrees with this reading of § 6103(h). In Chamberlain v. Kurtz , which is binding on this Court, the former Fifth Circuit confronted a plaintiff's FOIA request for documents compiled during criminal and civil fraud investigations into the plaintiff's tax returns. 589 F.2d 827, 830-31 (5th Cir. 1979).[11] When the Chamberlain plaintiff claimed that § 6103(h)(4) applied to his case because the litigation was "a Federal or State judicial or administrative proceeding pertaining to tax administration," the Fifth Circuit rejected his argument. It held that Subsection (h) only "deals with disclosure to federal officials." Id. Thus, the Fifth Circuit concluded that "[s]ubsection(h)(4) merely describes the circumstances in which these officials may disclose *1371 confidential information in a judicial or administrative proceeding. Without subsection (h)(4) officials could not use the information as evidence in such proceedings." Id.[12] For this reason, the court held that Subsection 6103(h) "does not pertain to the release of information to the taxpayer himself." Id. at 837. Under Chamberlain , subsection 6103(h)(4) does not apply to Greenberger's FOIA request, because he is not a "federal officer or employee" seeking to disclose information in a judicial proceeding pertaining to tax administration.
The Court also holds that this FOIA case is not a "judicial or administrative proceeding pertaining to tax administration." 26 U.S.C. § 6103(h)(4). A FOIA proceeding does not "pertain" to tax administration, and the third party return information does not "directly affect[ ] the resolution of an issue in" this proceeding, because the FOIA case is entirely about Greenberger's entitlement to information, not his criminal or civil tax-related liability. Id. ; see also Safeway, Inc. v. IRS , No. C 05-3182 SBA, 2006 WL 3041079, at *8 (N.D. Cal. Oct. 24, 2006) (FOIA case not tax administration proceeding under § 6103(h) ).
Next, Greenberger argues he is entitled under § 6103(c) to the third party return information he provided to the IRS. Section 6103(c) allows for the IRS to "disclose the return of any taxpayer, or return information with respect to such taxpayer, to such person or persons as the taxpayer may designate in a request for or consent to such disclosure." However, this exception is "subject to such conditions as [the Secretary of the Treasury] may prescribe by regulations." Id.
Greenberger argues that the third-party return information in the possession of the IRS has been assembled as part of an IRS investigation into his activities as a tax promoter and is in "his examination file," and so is his return information. (Doc. 45 at 15.)
First, Greenberger's reading of § 6103(c) is not reconcilable with the rest of the statute and must be rejected. The mere fact that other taxpayers' information is in Greenberger's file does not convert that information into "his" return information so that he can request it under § 6103. To allow otherwise would mean that any taxpayer under investigation-even one who was not an accountant, preparer, or the like-could access the third-party taxpayer information in his file if that information was compiled as part of the IRS's investigation of the alleged wrongdoer. That can't be right. Instead, Congress elected via § 6103 to presume that a taxpayer's return information was confidential, and to permit the disclosure *1372 of such information to third parties-even accountants-only if they have been "designate[d] in a request for or consent to such disclosure." 26 U.S.C. § 6103(c).[13] Greenberger cites no cases applying § 6103 that hold otherwise.
Second, Greenberger did not comply with the provisions of § 6103(c) that might have allowed him to obtain third-party return information. (Schwarz Decl. ¶ 12 (averring that Greenberger has not "secured consent to disclosure from the third party taxpayers").)[14] Specifically, "IRS regulations, and thus FOIA, require requesters seeking a third party's return information to file that third party's authorization with their initial FOIA request." Hull , 656 F.3d at 1179 (10th Cir. 2011). With respect to § 6103(c), "in the case of ... [a] person requesting records ... pertaining to other persons, the requester shall furnish a properly executed power of attorney, Privacy Act consent, or tax information authorization, as appropriate." Id. "Lest there be any confusion, the IRS regulations advise requesters that only requests for records which fully comply with the requirements of this section can be processed in accordance with this section." Id. There is no dispute that Greenberger did not submit third-party authorizations. He is thus not entitled to the third-party return information he seeks.
Finally, the fact that Greenberger is unable to access these documents to help him in responding to the IRS's investigation has no bearing on the appropriateness of his FOIA request, because a party's "litigation-generated need" for materials does not enhance or diminish that party's rights under FOIA. NLRB v. Robbins Tire & Rubber Co. , 437 U.S. 214, 242 n.23, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). This is because "Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest [in a particular document] ... [so that] disclosure of the requested information to [a party] would also mandate disclosure to any potential [member of the public] who files a FOIA request." Solar Sources, Inc. v. United States , 142 F.3d 1033, 1041 (7th Cir. 1998) (citing Dep't of Defense v. Fed. Labor Relations Auth. , 510 U.S. 487, 496, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) ). In other words, if the Court determined Greenberger was entitled to the third-party return information he seeks, it would have to disclose that same information to the general public too. Forest Serv. Empl. for Envt'. Ethics v. U.S. Forest Serv. , 524 F.3d 1021, 1025 (9th Cir. 2008) ("FOIA provides every member of the public with equal access to public documents and, as such, information released in response to one FOIA request must be released to the public at large.") Section 6103 plainly bars that result.
The IRS properly withheld the documents in Vaughn index lines 6 through 43, 97, 153-155, and 159 through 187 pursuant to Exemption 3 and § 6103. The Court GRANTS summary judgment in favor of the IRS and against Greenberger as to these documents.
2. Exemption 7A: Interference with an Open Investigation
The Court next addresses the IRS's argument that it was entitled to withhold *1373 virtually every document it identified[15] because those documents are "records or information compiled for law enforcement purposes"[16] and disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A) ("Exemption 7A").
Exemption 7A recognizes that "law enforcement agencies have legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it comes time to present their case." Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice , 746 F.3d 1082, 1096 (D.C. Cir. 2014) (hereinafter "CREW ") (internal brackets omitted) (quoting NLRB v. Robbins Tire & Rubber Co. , 437 U.S. at 224, 98 S.Ct. 2311 ). Thus disclosures that might "reveal the scope and focus of the investigation; identify and tip off individuals of interest to law enforcement; and provide suspects or targets the opportunity to destroy evidence and alter their behavior to avoid detection" may be withheld under Exemption 7A. Manning v. U.S. Dep't of Justice , 234 F.Supp.3d 26, 36 (D.D.C. 2017) (citing CREW , 746 F.3d at 1098 ).
Exemption 7A often operates differently than other FOIA exemptions. As described above, usually an agency withholding information responsive to a FOIA request must provide a description of the withheld material alongside an explanation for nondisclosure. But when Exemption 7A is invoked, an agency is permitted to group documents in categories and offer generic reasons for withholding each category.[17] Solar Sources, Inc. , 142 F.3d at 1040 ; CREW , 746 F.3d at 1098 ;[18] see also Van Bilderbeek v. U.S. Dep't of Justice , 416 Fed.Appx. 9 (11th Cir. 2011) (affirming district court's holding in Bilderbeek v. U.S. Dep't of Justice , No. 6:08-CV-1931-ORL, 2010 WL 1049618, at *4 (M.D. Fla. Mar. 22, 2010) that it is "well-established that [an agency] may justify its withholdings by reference to generic categories of documents, rather than document-by-document" when invoking Exemption 7A).
Thus, an agency can categorically withhold responsive documents under Exemption 7A if:
• There is an ongoing investigation;
• The agency defines its categories functionally;
• The agency conducts a document-by-document review and assigns documents to the appropriate category; and
• The agency explains how the release of each category would interfere *1374 with enforcement proceedings.
Manning , 234 F.Supp.3d at 35. The Court therefore turns to these factors.
a. Ongoing Investigation
Greenberger first challenges the IRS's assertion that there is an ongoing investigation. An investigation is "ongoing" if there is at a "reasonable chance that an enforcement proceeding will occur." Dickerson v. U.S. Dep't of Justice , 992 F.2d 1426, 1430 (6th Cir. 1993). "[S]o long as the investigation continues to gather evidence for a possible future [ ] case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies." Manning , 234 F.Supp.3d at 33 (citing Juarez v. Dep't of Justice , 518 F.3d 54, 59 (D.C. Cir. 2008) ).
Here, there is no genuine dispute of fact that there is an ongoing investigation. Multiple IRS employees have testified that the investigation is ongoing. (Second Declaration of Chris Pavilonis ¶¶ 3-8 (Doc. 44-2) (testifying that the investigation has not concluded, in part due to Greenberger's failure to "fully cooperat[e] with the investigation;" Fitzpatrick Decl. ¶ 4; Czachur Decl. ¶ 6; Doc. 48) (asserting that as of September 18, 2017 the investigation was ongoing).)
This is sufficient, absent contrary evidence or bad faith on the part of the agency. Larson , 565 F.3d at 862 (agency declarations sufficient to grant summary judgment absent conflicting evidence or bad faith); Robbins, Geller, Rudman & Dowd, LLP v. SEC , No. 3:14-CV-2197, 2016 WL 950995, at *4 (M.D. Tenn. Mar. 12, 2016) (finding that agent's assertion that investigation was ongoing entitled to presumption of good faith).
Nonetheless, Greenberger argues that the IRS's Vaughn index reveals no new documents since August of 2015 and that this suggests there is no ongoing investigation. This is without merit because, as the IRS explains, it was under no obligation to search for and identify documents generated after it received the FOIA request. Church of Scientology v. IRS , 816 F.Supp. 1138, 1148 (W.D. Tex. 1993) ("Documents generated subsequent to the date specified in the request are outside the scope of the request and need not be disclosed.") And importantly, Greenberger was still the target of a pending IRS summons enforcement action-which he had refused to comply with-at the time he filed his motion for summary judgment. This plainly shows that the IRS was trying to collect documents from Greenberger through a court proceeding for the duration of most of this case.
Greenberger also argues that the agency's conduct in this case, especially its decision to withhold documents, is indicative of bad faith. But the Court has repeatedly rejected this argument when it addressed the issue in the context of the IRS's summons action against Greenberger. (United States v. Greenberger , Case No. 15-cv-3532, Order, Doc. 24, February 3, 2017 (rejecting motion for reconsideration asking the Court to quash an IRS subpoena and "find[ing] that Mr. Greenberger has failed to point to new evidence of bad faith).) And in any event, the Court agrees with the IRS that the fact that the IRS withheld a significant number of documents is not evidence of bad faith, especially because the Court is affirming the IRS's decision. Moffat v. U.S. Dep't of Justice , 716 F.3d 244, 255 (1st Cir. 2013) ("we question whether an agency's incorrect invocation of FOIA exemptions can ever serve as evidence of bad faith.") As explained below, turning over an investigative file to a prospective defendant to a law enforcement action before any action is initiated is the exception, not the rule.[19]
*1375 b. The IRS Properly Defined Categories of Documents and Has Demonstrated Disclosure Will Likely Interfere with its Investigation.
Greenberger also argues that the IRS has not fulfilled its obligation of showing how disclosure would likely interfere with its investigation.
To meet Exemption 7A's requirements, the agency must define the categories in a way that lets the court "trace a rational link between the nature of the document and the alleged likely interference with the investigation." Id. The key is that the "the classification should be clear enough to permit a court to ascertain how each ... category of documents, if disclosed, would interfere with the investigation." Curran v. Dep't of Justice , 813 F.2d 473, 475 (1st Cir. 1987) ("Withal, a tightrope must be walked: categories must be distinct enough to allow meaningful judicial review, yet not so distinct as prematurely to let the cat out of the investigative bag.") However, "generic determinations of likely interference" are permissible. Robbins , 437 U.S. at 236, 98 S.Ct. 2311 ; Curran v. Dep't of Justice , 813 F.2d 473, 475 (1st Cir. 1987). And when the "requested records relate to a specific individual or entity that is the subject of the ongoing investigation ... the likelihood of interference [is] readily apparent." CREW , 746 F.3d at 1098.
Here, IRS Revenue Agent Group Manager Fitzpatrick avers that release of the information would "harm the ongoing examination by prematurely revealing the evidence gathered and strategies adopted by the IRS ... in the investigation of the plaintiff, by revealing the nature, direction, scope, and focus of the case against the plaintiff, and by providing premature insight into the strength of the Service's position and its reliance on certain evidence." (Fitzpatrick Decl. ¶ 18.)
She further avers that the documents include emails and handwritten and typewritten notes as well as transaction spreadsheets and calculations which if disclosed to the plaintiff would provide a roadmap as to the direction of the ongoing investigation. (Id. ) And she declares in her affidavit that disclosure of certain return information "would provide plaintiff with an unfair advantage in that it would prematurely enable him to craft explanations or defenses based upon his knowledge of the examiners' and counsel's strategy, theories, methods, and points of focus." (Id. ¶ 19.)
Julie Schwartz, IRS Senior Counsel, avers that she "personally reviewed and [is] familiar with all the records at issue in this lawsuit." (Schwartz Decl. ¶ 3.) In discussing the application of the deliberative process privilege, Schwartz avers that "the examination generated a large number of draft documents and items of communication analyzing the various legal and procedural issues involved in the examination and proposed enforcement actions." (Id. ¶ 19.)
The IRS's Vaughn index-which it was not required to provide when asserting Exemption 7A-provides more detail. (Doc. 38-10.) It describes the 3,366 documents identified by Greenberger on lines 3 and 4 of the index as an "IRS Revenue Agent's Injunction Referral Report and associated exhibits and addendum prepared by IRS agents with the assistance of IRS counsel." (Doc. 38-10 at 1.) According to the IRS's manual, injunction referrals *1376 for promoters (including accountants) who engage in "abusive promotions that erode the voluntary tax compliance system and result in substantial revenue loss" "should include detailed information about the promoter [here, Greenberger] and any related promoters, the mechanics of the promotion, and the basis for an injunction recommendation." Internal Revenue Manual § 4.32.2.9.1 (last updated June 8, 2012) (available at https://www.irs.gov/irm/part4/irm_04-032-002-cont02.html) (last accessed September 17, 2017). The referral report typically includes an "investigation summary," "facts and findings," a potential witness list, and the relation of the promoter to any other potential investigation targets. Id. The facts section usually includes the agency's assessment of the "[m]echanics of the promotion," potential "applicable penalties," "penalty calculations," and "recommendations"-indicating that the "facts" in the "facts and findings" section are inextricable from the agency's analysis of the promoter's potential liability and the strength of its case. Id. at § 4.32.2.9.1.2. And IRS also avers here that the document contains, among other things, "legal arguments researched, analyzed and prepared by IRS counsel for DOJ counsel in anticipation of litigation." (Doc. 38-10 at 1.)
Next, the documents on the Vaughn index lines 43 through 71 and 103 all concern portions of an "IRS revenue agent's case file" pertaining to a number of "transaction structure[s] currently the subject of an open tax investigation." Many of these segments of the case file contain "third party tax return and return information, including DIF score, appraisal, personal information related to investors in the transactions ... and other documentation related to the transaction under investigation." (Doc. 38-10 at 2.) Other case file portions include "handwritten notes," "draft tax opinion[s]," and a variety of transactional documents related to the investigation, (id. ), and "notes of the revenue agent," "e-mail correspondence," "balance sheets" and "profit and loss information" likely to be relevant to the investigation, and so on. (Id. at 3.) The descriptions of these documents in the Vaughn index allow the court to "trace a rational link between the nature of the document and the alleged likely interference with the investigation." Manning , 234 F.Supp.3d at 35. As Fitzpatrick avers, disclosing an IRS revenue agent's case files during an ongoing investigation will likely "provide a roadmap as to the direction of the ongoing investigation." Similarly, pages 10 through 41 of the Vaughn index-Lines 219 through 965-are almost entirely comprised of e-mails involving IRS employees and discussing the scope of the investigation. (Doc. 38-10 at 10-41.) These have been sufficiently categorized to allow the Court to determine that there is a reasonably likely chance that disclosure would interfere with an ongoing investigation. Notably, though Greenberger opposes granting summary judgment in favor of the IRS, he does not directly address these reams of e-mails.
Courts have repeatedly found explanations and categorizations like those found in the declarations and Vaughn index submitted by the IRS sufficient when an agency is asserting Exemption 7A. Van Bilderbeek v. U.S. Dep't of Justice , 416 Fed.Appx. 9, 13 (11th Cir. 2011) (rejecting plaintiff's assertions that agent's declarations were vague); Radcliffe v. IRS , 536 F.Supp.2d 423, 438 (S.D.N.Y. 2008), aff'd , 328 Fed.Appx. 699 (2d Cir. 2009) (affirming refusal to disclose when release of certain documents "would allow plaintiff to determine the nature, direction, scope and limits of the investigation, as well as the evidence secured in response to IRS summonses and the Service's reliance thereon; would allow plaintiff earlier and greater access to information about the investigation *1377 than he would otherwise be entitled to receive and would afford plaintiff the opportunity to construct defenses and/or tamper with evidence since he would know what information has and has not been collected"); Wilson v. U.S. Dep't of Treasury , No. 15-C-9364, 2016 WL 8504990, at *9 (N.D. Ill. Oct. 12, 2016) (agent's declaration sufficient when it stated that documents would reveal "nature and source of evidence gathered by the revenue agent; the reliance placed by the revenue agent on particular evidence; the transactions being investigated; the revenue agent's strategy; and the scope, progress, and direction of the investigation.") The combination of the declarations from the IRS plus the Vaughn index identifying the responsive documents and describing them is sufficient to allow the Court to determine that release of the IRS's investigative file or portions thereof would be reasonably likely to interfere with an ongoing law enforcement proceeding. The Court notes that Fitzpatrick's declaration on its own would likely have been insufficient, but that the description of the documents in the Vaughn index allows the Court to apply Exemption 7A to these documents.
Ultimately, Greenberger wants to see a summary of the case against him before one has been filed. Plainly Exemption 7A prevents this. Shannahan v. IRS , 672 F.3d 1142, 1151 (9th Cir. 2012) ("The fact that the Cheungs wish to use the documents they seek in their civil tax proceeding does not make Exemptions 3 and 7(A) inapplicable. Indeed, it is precisely because of the uses to which the Cheungs might put the documents that the exemptions are applicable."); Pully v. IRS , 939 F.Supp. 429, 436 (E.D. Va. 1996) (affirming IRS's withholding of over 5,000 pages of documents, including a fraud referral report, responses of financial institutions to summons, and public land records, based upon IRC § 6103(e)(7) and Exemption (7)(A) ); Bernal v. IRS , Case No. 79-C-1117-SAW, 1980 WL 1615, at *1 (N.D. Cal. 1980) (affirming withholding under Exemption 7A of a "referral report" that would "reveal the strengths and weaknesses of the Government's case" in an IRS civil and criminal investigation). Indeed, Greenberger's FOIA request is precisely the kind of request Exemption 7A is meant to cover, because it would give him an unfair advantage by giving him access to the government's case earlier than he is entitled to. Shannahan , 672 F.3d at 1151 (plaintiffs seeking IRS documents in connection with civil investigation aimed at them were not entitled to those documents "precisely because of the uses" that they might put them to in combating the investigation). He would thus be able to "construct defenses" before the agency or Department of Justice brought an enforcement action. NLRB v. Robbins Tire & Rubber Co. , 437 U.S. at 241, 98 S.Ct. 2311. While the Court understands Greenberger's desire to press his substantive case to the IRS, the D.C. Circuit has persuasively explained why an agency might not want the target of an investigation to participate in that investigation: doing so would allow "a knowledgeable subject [to understand] the direction in which the investigation was going and provide strong clues as to the evidence [the agency] had in hand." Juarez v. Dep't of Justice , 518 F.3d 54, 59 (D.C. Cir. 2008) (target of drug investigation expressed desire to be interviewed by DEA; DEA declined because interviewing her would reveal direction of investigation).
Finally, the Court rejects Greenberger's argument that the IRS failed to segregate material properly. The IRS has presented testimony that its attorneys reviewed each and every document at issue and determined that Exemption 7A applied and that the material was not segregable. (Schwartz Decl. ¶¶ 3, 9.) "That attestation, when combined with the presumption that agencies comply with their *1378 duty of segregation, is sufficient to demonstrate Defendants' compliance with FOIA's segregability requirement." Manning , 234 F.Supp.3d at 38 (citing Dillon v. Dep't of Justice , 102 F.Supp.3d 272, 298-99 (D.D.C. 2015) and DiBacco v. U.S. Dep't of the Army , 983 F.Supp.2d 44, 65-66 (D.D.C. 2013) ) (aff'd in part, remanded in part sub nom. DiBacco v. U.S. Army , 795 F.3d 178 (D.C. Cir. 2015) ). See also Van Bilderbeek v. U.S. Dep't of Justice , 416 Fed.Appx. 9, 13 (11th Cir. 2011) (rejecting argument that affidavit asserting non-segregability was insufficient when "contents of the records and documents" was identified by agent and "close proximity" of segregable to non-segregable information made segregation impracticable). Here, Fitzpatrick testified that any non-exempt information was not reasonably segregable. (Fitzpatrick Decl. ¶ 7.) And Julie Schwarz, "along with two Office of Chief Counsel docket attorneys, [ ] reviewed all records at issue in this litigation and [ ] made reasonable efforts to make every reasonably segregable non-exempt portion of every responsive record available to" Greenberger, and only withheld records that [fell] entirely within a FOIA exemption or "are so inextricably intertwined with non-exempt material as to be non-segregable." (Schwartz Decl. ¶ 9.) Under Exemption 7A, this is enough. See Solar Sources, Inc. , 142 F.3d at 1039 ("[I]f the proportion of nonexempt factual material is relatively small and is so interspersed with exempt material that separation by the agency and policing of this by the courts would impose an inordinate burden, the material is still protected because, although not exempt, it is not reasonably segregable.") The Court therefore GRANTS summary judgment in favor of the IRS as to documents withheld under Exemption 7A.
3. Remaining Issues
The Court notes that Greenberger also contends more generally that the IRS is not entitled to summary judgment. The Court assumes he means to challenge the remainder of the IRS's decisions to withhold documents. His reasons for doing so have already been rejected: he claims the search was inadequate, that there has been no active investigation since late 2015, that he poses no threat of obstruction and that the IRS imposed "blanket exemptions on a categorical basis." (Motion, Doc. 42-1 at 36-38.) As discussed in this Order, the search was adequate, the IRS was only required to produce documents up until late 2015 because that is when the FOIA request was sent, the fact that Greenberger claims he poses no threat of obstruction is immaterial when granting him early access to the investigation defeats the purpose of Exemption 7A, and the IRS was entitled to impose two categorical exemptions as a matter of law.[20]
Finally, the Court declines to order release of the Field Guidance Memorandums identified by Greenberger. These memorandums are documents compiled by the IRS for the purposes of investigations into taxpayers. Greenberger claims that these documents must be released because they are public, but does not point to where in the public domain they are or might be located. He has therefore failed to meet his burden in demonstrating these memos are in the public domain and therefore that the IRS has improperly withheld them. Lawrence v. IRS , 355 F.Supp.2d 1307, 1311 (M.D. Fla. 2004) ; Bartko v. U.S. Dep't of Justice , 167 F.Supp.3d 55, 72 (D.D.C. 2016) (Plaintiff "has failed to meet its initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld.")[21]
*1379 And the IRS invoked Exemption 7A and sufficiently supported its position as to these documents in its Vaughn index.
IV. Conclusion
For the foregoing reasons, Greenberger's Motion is DENIED . [Doc. 42.] The Court GRANTS summary judgment in favor of the IRS and against Greenberger as described herein. [Doc. 38.] The Court understands Greenberger's frustrations, but notes that when the investigation against him concludes, Exemption 7A will no longer apply and he may be able to seek disclosure of at least some of the withheld records at that time. Barney v. IRS , 618 F.2d 1268, 1273-74 (D.C. Cir. 1980). The Clerk is DIRECTED to close this case.
IT IS SO ORDERED this 28th day of September, 2017.

5 U.S.C. § 552.

See Internal Revenue Service, "Conservation Easements," available at https://www.irs.gov/charities-non-profits/conservation-easements (last accessed September 26, 2017).

Fitzpatrick is a Revenue Agent Group Manager within the IRS's Small Business/Self Employed department. (Fitzpatrick Decl. ¶ 1.)

Greenberger disputes that Ms. Washington's IRDS database search was by itself "adequate" as defined by FOIA. (Pl.'s Resp. SMF ¶ 7.)

Greenberger says he is without sufficient information or belief to admit or dispute many of the facts relating to the particulars of the IRS's search. (E.g. , Pl.'s Resp. SMF ¶ 8.) Many of these facts are found in the affidavits of IRS employees. "Summary judgment may be granted on the basis of agency affidavits in FOIA cases, when those affidavits contain reasonable specificity of detail rather than merely conclusory statements, and when they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." Cause of Action v. IRS , 253 F.Supp.3d 149, 155 (D.D.C. 2017) (quoting Judicial Watch, Inc. v. U.S. Secret Serv. , 726 F.3d 208, 215 (D.D.C. 2013) ). For this reason, the Court considers the contents of those affidavits when they are not contradicted by evidence of bad faith or conflicting evidence.

Greenberger argues that the IRS was obligated to collect and review the return information of the individual members of the partnerships. (Pl.'s Resp. SMF ¶ 18.)

The Court notes that the fact that the IRS "determined" it could not locate other responsive records that were not covered by FOIA exemptions does not mean that the IRS properly determined the scope or applicability of those exemptions or that the IRS in fact could not have located other responsive records. (See Pl.'s Resp. SMF ¶ 23.)

Greenberger also speculates that because some of these individuals were not IRS employees, that the IRS may have waived its entitlement to exemptions by making documents sent to these individuals public. But as discussed below, Greenberger is the one with the burden of showing that a given document has been made public. He does not attempt to do so.

Return information includes a third-party taxpayer's identity. 26 USC § 6103(b)(2), and "whether the taxpayer's return was, is being, or will be examined or subject to other investigation." Snider v. United States , 468 F.3d 500, 507 (8th Cir. 2006).

Greenberger argues that the abbreviation "etc." in § 6103(h)'s caption does the work of expanding the provision's application beyond federal employees. But the last antecedent rule suggests that the "etc." applies only to the phrase "tax administration," not to "Federal officers and employees." And subsection (h) does address more than just tax administration: it covers reports to the IRS's Oversight Board, including reports for carrying out the Board's oversight duties. 26 U.S.C. § 6103(h)(6)(B)(ii). Thus the natural reading of "etc." in § 6103(h)'s caption is that it does not expand the provision's application beyond federal officials.

In Bonner v. Prichard , 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit announced prior to October 1, 1981.

Greenberger cites First Western Gov't Sec., Inc. v. United States , 796 F.2d 356, 360 (10th Cir. 1986), which reached the opposite result of the Fifth Circuit in Chamberlain . First Western is not binding on this Court, while Chamberlain is. Moreover, First Western explicitly recognized that the former Fifth Circuit reached a different result in Chamberlain , and declined to go along with it. Id. Even if the Court were to apply the Tenth Circuit's view of § 6103 in First Western , it would not change the result of this case, because the Court's holding that this FOIA case is not a judicial or administrative proceeding forecloses relief for Greenberger too.
Greenberger also cites to United States v. Barshov , an Eleventh Circuit case where the government was forced to disclose tax returns of a key government witness in a criminal prosecution. 733 F.2d 842, 847 (11th Cir. 1984). Barshov is perfectly consistent with Chamberlain -of course Greenberger would be entitled to see the evidence against him were he ever sued or prosecuted by the Government-and Barshov is not even a FOIA case. Goldberg v. United States , No. 13-61528-CIV, 2015 WL 4656361, at *6 (S.D. Fla. Aug. 5, 2015), another case cited by Greenberger, does not address the binding decision in Chamberlain and is therefore not persuasive.

Greenberger's reliance on Grasso v. IRS , 785 F.2d 70 (3d Cir. 1986) does nothing to fix his conundrum. He argues that this case shows that the IRS must disclose to him information he already has in his possession. But Grasso is a case about forcing the IRS to disclose to a taxpayer the taxpayer's own interview with the agency. Id. at 77. Grasso did not deal with third-party information and is therefore inapposite.

Greenberger allegedly knows their identities, because they are his clients. If they aren't his clients, there is no reason at all to disclose their names at this time.

The IRS appears to have asserted this exemption for every document listed on the Vaughn index except for (1) a handful of documents mistakenly produced that were in fact non-responsive and (2) a e-mail with an attached litigation hold letter. (Doc. 38-10 at 21.) But litigation hold letters are generally privileged, so the IRS was entitled to (and did) withhold it on that basis. Magnetar Tech. Corp. v. Six Flags Theme Park, Inc. , 886 F.Supp.2d 466, 482 (D. Del. 2012).

The IRS is a law enforcement agency within the meaning of Exemption 7. Church of Scientology Int'l v. IRS , 995 F.2d 916, 919 (9th Cir. 1993). Both civil and criminal enforcement activities of the IRS fall within the meaning of the exemption. Id.

Notably, the agency is not always required to provide a Vaughn index to assert exemption 7A, for the same reasons it is permitted to identify categories of documents: compiling a Vaughn index might reveal the very information the government is trying to protect about its ongoing investigation. Solar Sources , 142 F.3d at 1040.

The government is sometimes permitted to use a categorical approach when dealing with other exemptions. Maydak v. U.S. Dep't of Justice , 218 F.3d 760, 766-67 (D.C. Cir. 2000).

The Court notes that the IRS at one point argues that there is a genuine issue of fact as to whether the investigation is ongoing. The Court considers this slip-up to be irrelevant. The clear takeaway from the IRS's papers is that there is an ongoing investigation, and the record unequivocally supports that point. The IRS also represents that there is an "issue of material fact" as to whether the IRS properly asserted FOIA Exemption 5. (Doc. 44 at 14.) The Court doesn't reach that exemption, and so the IRS's concession is irrelevant.

Greenberger did not ask in his motion for in camera review of any documents.

The IRS has stated on the record that the documents are not public. (Doc. 50.)